UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:18-cr-00106-GFVT-MAS |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GERALD G. LUNDERGAN and | ) | **&** |
| DALE C. EMMONS, | ) | **ORDER** |
| | ) | |
| Defendants. | | |

*** *** *** ***

A federal criminal defendant in the United States is generally charged by way of an indictment returned in open court by a grand jury.  An indictment gives a defendant notice of the crimes charged against him so he can adequately prepare a defense.  Federal Rule of Criminal Procedure 12(b) allows for the dismissal of an indictment prior to trial if the charging document suffers from certain defects.  Defendants Gerald G. Lundergan and Dale C. Emmons seek relief under this provision.  The Defendants have filed several motions for dismissal of the Indictment returned against them on the grounds that the Indictment fails to allege violations of law.  Because the Indictment complies with the requirements of the United States Constitution, the multiple motions to dismiss filed by both Mr. Lundergan and Mr. Emmons will be **DENIED**.

**I**

In August 2018, a federal grand jury returned an Indictment against Gerald G. Lundergan and Dale C. Emmons, including ten counts against Mr. Lundergan and six counts against Mr. Emmons.  [R. 1.]  Both Defendants were charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count of unlawful corporate campaign contributions in violation of 52 U.S.C. §§ 30118 and 30109(d)(1)(A)(i) as well as 18 U.S.C. § 2,

two counts of making false statements in violation of 18 U.S.C. §§ 2 and 1001(a)(2), and two counts of falsification of records in violation of 18 U.S.C. §§ 2 and 1519. *Id.* Against Mr. Lundergan, the indictment adds two additional violations of 18 U.S.C. § 1001(a)(2) and two additional violations of 18 U.S.C. § 1519. *Id.* The thirty-page Indictment alleges Mr. Lundergan and Mr. Emmons conspired to make illegal contributions of corporate money to Candidate A and Political Committee 1 and then caused Political Committee 1 to make false statements to and file false records with the Federal Election Commission.

At all relevant times, Mr. Lundergan was the owner of the Lundergan Companies, which include S.R. Holding Co., Inc., the Lundergan Group, Signature Special Events, and Lundy's Special Events. [R. 34-1 at 1; R. 1 at ¶ 1.] During the same time, Mr. Emmons worked as a political consultant and served as a corporate officer of Emmons & Company, Inc. [R. 1 at ¶ 2.] Candidate A, a family member of Mr. Lundergan, announced her United States Senate campaign on July 1, 2013, and held a kickoff event on July 30, 2013, at the Carrick House, a property owned by Mr. Lundergan. [R. 33-1 at 4; R. 1 at ¶¶ 5–6.] Candidate A won her primary election on May 20, 2014, but she lost in the general election on November 4, 2014. *Id.* Both Mr. Lundergan and Mr. Emmons actively participated in Candidate A's campaign, with Mr. Lundergan allegedly overseeing campaign fundraising activities and payments to consultants and vendors while Mr. Emmons provided political consulting services to both Candidate A and Political Committee 1. [R. 1 at ¶¶ 7–8.]

The Government asserts that Mr. Lundergan coordinated consultants and vendors to provide campaign services to Candidate A and Political Committee 1, but rather than billing Political Committee 1, these vendors were directed to bill S.R. Holding Co., Inc. *Id.* at ¶ 14. Then, S.R. Holding Co. allegedly paid these vendors and consultants, but did not seek

reimbursement from Political Committee 1 or Candidate A. *Id*. at ¶¶ 15–16. Mr. Emmons, working as a political consultant, purportedly sought and received payment for his services through S.R. Holding Co. and Mr. Lundergan, rather than through Political Committee 1. *Id*. at ¶ 17. Furthermore, the Government asserts that Mr. Emmons also directed certain vendors to bill Emmons & Company, Inc. for their services to the campaign, but instead of receiving reimbursement from Political Committee 1, Emmons & Company sought and received reimbursement from S.R. Holding Co. *Id*. at ¶ 18. Invoices associated with these payments ostensibly indicated the payments were for "consulting services." *Id*. These payments potentially were submitted after the campaign, though they compensated for services rendered during the campaign. *Id*. at ¶ 19.

In this alleged scheme, Mr. Lundergan and Mr. Emmons concealed these payments from Political Committee 1, the Federal Election Commission, and the public, resulting in Political Committee 1 filing reports that did not accurately portray the source and amount of contributions as required by law. *Id*. at ¶ 20. The Indictment continues on to allege a list of payments for campaign expenses made from bank accounts held by S.R. Holding Co. and Emmons & Company. *Id*. at ¶ 21.

Mr. Lundergan filed six separate motions to dismiss. [R. 33; R. 34; R. 35; R. 36; R. 37; R. 38.] Mr. Emmons moved to join those motions and Mr. Lundergan's replies. [R. 41; R. 65.] The Government filed no objections to Mr. Emmons's requests for joinder, instead responding to Mr. Lundergan's motions as if the motions were filed by both Defendants. [*See* R. 51; R. 53; R. 54; R. 55; R. 56.] Accordingly, Mr. Emmons's Motions for Joinder [R. 41; R. 65] are granted, and the Court will address the motions to dismiss as to both Mr. Lundergan and Mr. Emmons, ultimately denying them all.

## II

Federal grand jury indictments have a purpose.  As the Supreme Court explained in

*Russell v. United States*, our use of the indictment today is rooted in the guarantees set forth in

the Fifth and Sixth Amendments to the United States Constitution.  *See* 369 U.S. 749, 760–61

(1962).  The Fifth Amendment provides that "No person shall be held to answer for a capital, or

otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ," U.S.

CONST. amend. V, and according to the Sixth Amendment, "In all criminal prosecutions, the

accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

U.S. CONST. amend. VI.  Out of this constitutional framework comes two criteria for federal

indictments.  An indictment must first set forth the elements of the offense charged, thereby

giving notice to a defendant of the accusations he must face.  Second, an indictment must be

sufficiently specific so that a defendant may plead double jeopardy, if charged in a subsequent

proceeding with the same crime based on the same facts.  *See Russell*, 369 U.S. at 763–64;

*United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).  With these requirements in mind,

the Court finds the Indictment returned against Mr. Lundergan and Mr. Emmons passes

constitutional muster.

## A

At numerous times in each of the six motions to dismiss, Mr. Lundergan and Mr.

Emmons attempt to litigate the facts of this matter.  Motions to dismiss before trial are capable of

determination if the motion raises questions of law, not facts.  *United States v. Jones*, 542 F.2d

661, 664 (6th Cir. 1976).  A District Court may make preliminary findings of fact if such

findings are necessary to determine the presented questions of law, but such findings cannot

"invade the province of the jury."  *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997).

When a Defendant instead claims the allegations included in the indictment are false or untrue, this is not a question of law, but rather a fact to be tried by the jury. *Universal Milk Bottle Service v. United States*, 188 F.2d 959, 962 (6th Cir. 1951).

Both Defendants vigorously argue they had no intent to violate campaign finance regulations, and therefore, the Indictment must be dismissed. [*See e.g.* R. 33-1 at 28–35; R. 36-1 at 21–32.] First, they claim that the payments were not reported to the Campaign because such payments were inadvertently categorized as "personal" and would potentially violate the personal use ban for campaign funds. [R. 33-1 at 30–31.] Additionally, in an attempt to demonstrate that their failure to report the spending was accidental, Defendants claim that once they became aware of their missteps, S.R. Holding Co. immediately billed and sought reimbursement from the Campaign for the very expenses outlined in the Indictment. [R. 36-1 at 26.] They maintain that the Government has failed to demonstrate Defendants' knowledge or intent to defraud. *Id*. at 27–28.

However, Defendants' arguments concerning these facts are premature and misplaced. The Indictment alleges clearly that both Mr. Lundergan and Mr. Emmons "knowingly and voluntarily" committed these crimes. [R. 1 at 5, 21, 22, 23, 24, 25, 26, 27, 28, and 29.] The Indictment is not meant to *prove* the facts of the case; such task is left for trial. Instead, an indictment is sufficient so long as the alleged facts, if true, give rise to the offense charged. *United States v. Landham*, 251 F.3d 1072, 1079–80 (6th Cir. 2001). "Allegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial of the general issue." *Universal Milk Bottle Service v. United States*, 188 F.2d 959, 962 (6th Cir. 1951). According to the Indictment, the Defendants "knowingly and willfully" made contributions, "knowingly and willfully" caused false statements to be made,

and "knowingly and willfully" caused false records to be submitted to the United States Government.  [*See generally*, R. 1.]  After a lengthy recitation of the relevant transactions, the Indictment alleges the Defendants "*knowingly and willfully* caused contributions of corporate money" by S.R. Holding Co. to be made to Candidate A and Political Committee 1, they "*knowingly and willfully* caused the submission of a materially false, fictitious, and fraudulent statement," and they "*knowingly* concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the *intent* to impede, obstruct, and influence the investigation. . . ."  [R. 1 at 21–29 (emphasis added).]  Each charge of the indictment specifically alleges the element of intent, and in order to find the Defendants guilty of any charge, the jury will need to determine whether the Defendants possessed this requisite intent.  Mr. Lundergan and Mr. Emmons insist that any such violation of campaign finance law was unintentional, and thus the charges must be dismissed.  However, this is an issue of fact to be tried by the jury.  *Universal Milk Bottle Service*, 188 F.2d at 962.  Such is not a determination for the Court prior to trial.

Similarly, Mr. Lundergan and Mr. Emmons ask this Court to determine whether the relevant payments were "vendor payments," and thus not subject to the same campaign finance regulations.  [R. 35-1 at 10–22.]  To host campaign events, candidates for public office necessarily must contract with commercial vendors, such as rental companies, caterers, audio and visual technicians, or venue spaces.  The law recognizes that candidates do not typically have these resources available internally and sometimes must contract with outside vendors to facilitate campaign events.  Therefore, the services of the vendors are subject to somewhat different regulations.  For example, vendors are permitted to provide food and beverage at a discounted rate to a candidate, so long as the aggregate value of that discount is no more than

$1,000 per election and so long as the candidate is at least paying for the vendor's cost of the food and beverages. 11 C.F.R. § 100.78. Additionally, commercial vendors are permitted to extend credit to candidates, so long as the credit is extended within the ordinary course of business and the vendor followed established procedures and normal practice in doing so. 11 C.F.R. § 116.3.

A "commercial vendor" is defined as "any persons providing goods or services to a candidate or political committee whose usual and normal business involves the sale, rental, lease, or provision of those goods or services." 11 C.F.R. § 116.1. The Defendants here argue that S.R. Holding Co., the Lundergan Group, Signature Special Events, and Lundy's Special Events were all commercial vendors, and the payments at issue were made to the Lundergan Companies' sub-vendors. [R. 35-1 at 10–11.] Therefore, because these payments all went to vendors and sub-vendors, the payments for goods and services are not considered "contributions." *Id*. at 12. As vendors, the companies also had the ability to extend credit to the candidate and then collect on that credit after the campaign, so the bills submitted to Candidate A and Political Committee 1 after the investigation began were simply in the normal course of business as a vendor. *Id*. at 12–20.

Except, the Indictment alleges that Mr. Lundergan and Mr. Emmons caused *contributions* of corporate funds to be made to Candidate A and Political Committee 1. [R. 1 at 6, 21.] In order for a jury to find them guilty of these charges, the jury will need to decide whether the payments made were, in fact, contributions. Incorporated into their denial of the allegations, Mr. Lundergan and Mr. Emmons insist, again, that these services were simply "inadvertently not invoiced," arguing, again, a lack of intent. As stated previously, "Allegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial

of the general issue." *Universal Milk Bottle Service v. United States*, 188 F.2d 959, 962 (6th Cir. 1951). Whether this was inadvertent failure to invoice vendor services or intentional violation of the ban on corporate contributions is a question for the jury to decide.

## B

The Court can, however, determine if the Indictment is legally insufficient. An indictment is adequate under the Constitution if it both "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The indictment must assert facts which would establish a prima facie case of the defendant's guilt if the facts were proven. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992). "An indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888).

## 1

As an initial matter, Defendants claim that 18 U.S.C. § 1519 does not apply to campaign finance violations and the Federal Election Campaign Act (FECA, 52 U.S.C. §30101 *et seq.*) can only be used for civil enforcement. [R. 33-1 at 14–15; R. 36-1 at 14–21.] However, 52 U.S.C. § 30109(d) specifically authorizes criminal action, not just civil complaints, for violations of any

provision of the FECA. For violations of § 1519, Defendants assert that the statute only applies in the corporate fraud context, enacted in response to the collapse of Enron. [R. 36-1 at 14–15.] However, Defendants assert no law that supports such a limitation.

When engaging in statutory construction, a Court must begin with the language employed by Congress. *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003). If such language is plain, the Court's sole function must be to enforce the statute according to its terms. *Id*. The statute here is quite clear:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. While passed as part of the Sarbanes–Oxley Act, which does target corporate fraud, nothing in the broad language of § 1519 limits it to prosecution of corporate fraud cases. *See United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008). Both the Second and Eighth Circuits have concluded that § 1519 extends to violations of FECA because the financial records used by a political campaign are for recording or preserving information and thus fall within the statute's definition of a "tangible object." *United States v. Rowland*, 826 F.3d 100 (2d Cir. 2016); *United States v. Benton*, 890 F.3d 697 (8th Cir. 2018).

This Court agrees. Regulation of campaign finances rests in the proper administration of the Federal Election Commission, an agency of the United States. Financial disclosures are "records" typically used in the regulation of such finances. Intentionally altering, destroying, mutilating, concealing, covering up, falsifying, or making a false entry in those disclosures would impede, obstruct, or influence the proper administration of regulation within the Federal

Election Commission.  Thus, based on the plain language of § 1519, this Court joins with the Second and Eighth Circuits in finding that § 1519 extends to violations of FECA.

2

Defendants next assert the Indictment is insufficient because it fails to include facts supporting coordination between the campaign and the corporation.  [R. 34-1 at 10–22.]  Here it is necessary to first distinguish between campaign contributions and campaign expenditures.  While intimately related in practice, contributions and expenditures are subject to vastly different laws, regulations, and constitutional protections.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 356–59 (2010).  Contributions to a campaign include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office; or the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose."  52 U.S.C. § 30101(8)(A).  Expenditures include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office; and a written contract, promise, or agreement to make an expenditure."  52 U.S.C. § 30101(9)(A).  Both definitions include lengthy exceptions.  52 U.S.C. §§ 30101(8)(B) and 30101(9)(B).

The law treats these transactions separately, in part because expenditures carry a far lesser risk of *quid pro quo* corruption than contributions.  *Citizens United*, 558 U.S. at 345; *Buckley v. Valeo*, 424 U.S. 1, 47–48 (1976).  To mitigate risks arising from expenditures, certain expenses are also treated as contributions.  In *Buckley*, the Supreme Court recognized:

> The expenditure of resources at the candidate's direction for a fundraising event at a volunteer's residence or the provision of in-kind assistance in the form of food or beverages to be resold to raise funds or consumed by the participants in such an event provides material financial assistance to a candidate.  The ultimate effect is

the same as if the person had contributed the dollar amount to the candidate and the candidate had then used the contribution to pay for the fundraising event or the food. . . . Treating these expenses as contributions when made to the candidate's campaign or at the direction of the candidate or his staff forecloses an avenue of abuse without limiting actions voluntarily undertaken by citizens independently of a candidate's campaign.

424 U.S. at 36–37. *Buckley* drew a distinction between "independent expenditures" and "coordinated expenditures." *Id*. at 36–37, 46–47, 78; *see also Colo. Republican Fed. Campaign Comm.*, 518 U.S. 604, 613 (1996). Independent expenditures involve voluntary expenses incurred by private citizens independent of a candidate's campaign committee. On the other hand, coordinate expenditures, though also paid for by independent citizens, typically involve knowledge by the campaign, direction from the campaign, or the provision of in-kind assistance to be resold as a fundraiser for the candidate or used in a campaign event. *Id*. The FECA treats "coordinated expenditures" as a type of campaign contribution. *Colo. Republican Fed. Campaign Comm.*, 518 U.S. at 613. Mr. Lundergan and Mr. Emmons contend that the Indictment does not sufficiently allege coordination between the Defendants and the campaign, and that failure to allege sufficient coordination renders the Indictment insufficient. [R. 34-1 at 13–22.] The Defendants argue that the Indictment fails to allege any type of affirmative coordination by the campaign or include facts to support that Mr. Lundergan acted as an agent of the campaign to participate in such affirmative coordination. *Id*.

Contrary to defense arguments, the Indictment is not required to include the level of specificity they request. "An indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). The Indictment against Mr. Lundergan and Mr. Emmons specifies they are charged with violations pertaining only to alleged campaign contributions, not campaign expenditures. The consistent use of the

term "contributions," plus the inclusion of the relevant statutory language for each violation clearly establishes the crimes for which the Defendants are being charged. [*See generally* R. 1.] The United States is not required to define every component of every statutory term, including, here, all possible types of contributions. *See Hamling v. United States*, 418 U.S. 87, 118–19 (1974). Similarly, the United States is not required to *prove* its case to the Court at this stage, instead only providing facts, which if true, would support the elements of the offense. *United States v. McAuliffe*, 490 F. 3d 526, 531 (6th Cir. 2007). This Indictment includes over fifteen pages of specific facts supporting criminal charges related to contributions. Such robust provision of facts plus the use of statutory language renders this Indictment sufficient without requiring the United States to allege coordination between the Defendants and the campaign. *Id.* Any further argument by the Defendants that the alleged payments were "independent expenditures" lacking sufficient evidence of coordination is an improper attempt to have this Court determine the facts of the case, a job which must be left to the jury. *Universal Milk Bottle Service v. United States*, 188 F.2d 959, 962 (6th Cir. 1951).

**3**

Furthermore, both Mr. Lundergan and Mr. Emmons claim the alleged violations of §§ 1519 and 1001 are unconstitutionally vague. [R. 36-1 at 29–32.] A criminal statute is unconstitutionally vague if the statute "defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001). To succeed on a challenge for vagueness, a defendant must demonstrate that the statute is vague as applied to his particular case, not merely that the "statute could be construed as vague in some hypothetical situation." *Id.*

Defendants argue that § 1519 is vague in this context because it results in prosecution "for even inevitable reporting issues." [R. 36-1 at 30.] As to the charges under § 1001, the Defendants argue that the Indictment "does not specifically articulate that Defendants acted with the requisite knowledge or intent." *Id.* at 31. But the Indictment *does* allege such *mens rea*, stating that Mr. Lundergan and Mr. Emmons "knowingly and willfully caused the submission" of false statements and "knowingly concealed" false entries or records. [R. 1 at 22–29.] Because the jury is required to find their specific intent in order to return a guilty verdict, any concern that §§ 1519 and/or 1001 could result in a conviction for Mr. Lundergan's or Mr. Emmons's "innocent conduct" is misplaced. *Kernell*, 667 F.3d at 753. Any additional concern over future prosecution is a hypothetical situation which cannot establish unconstitutional vagueness. *Id.* at 750.

**4**

Because the charges as to violations of 18 U.S.C. § 1001 use the same conduct that serves the basis for the charges as to violations of 18 U.S.C. § 1519, Defendants argue that Counts 4, 6, 8, and 10 should be dismissed as multiplicitous. [R. 37-1 at 6–11.] Count 3 of the Indictment charges a violation of § 1001, whereby on October 14, 2013, the Defendants caused the submission of false statements to the Federal Election Commission. [R. 1 at 22.] Count 4 relies on that same conduct for a violation of § 1519, whereby Defendants on October 14, 2013, concealed, covered up, falsified, and made false entries causing a false report to be filed with the Federal Election Commission. *Id.* at 23. Counts 5 and 6 rely on statements and records for January 30, 2014; Counts 7 and 8 relate to statements and records on October 15, 2015; Counts 9 and 10 pertain to statements and records on January 30, 2016. *Id.* at 24–29. Defendants argue

that prosecuting the same conduct under both federal statutes violated double jeopardy principles. [R. 37-1 at 5.]

Multiplicity occurs when an indictment charges a single offense in more than one count. *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). While the same *conduct* can violate multiple statutes, the Fifth Amendment prohibits double prosecution for the same *offense*. In reviewing seemingly multiplicitous counts, a Court must first determine "whether Congress intended to punish each statutory violation separately," and if that finding is not dispositive, the Court looks to "whether each provision requires proof of a fact which the other does not." *Id.* (citations and quotations omitted). This second half of the analysis, from *Blockburger v. United States*, establishes clearly that a single act can violate two separate statutes, and that a defendant can permissibly be convicted under both statutes without violating double jeopardy principles. 284 U.S. 299, 304 (1932).

Section 1519 relates to the destruction, alteration, or falsification of records, while § 1001 prohibits materially false statements or representations of any kind. Nothing in either statue expressly prohibits applying both statutes simultaneously. Instead, the Senate Report discussion on § 1519 specifically cites to 18 U.S.C. § 1001, indicating Congress intended for both statutes to apply to matters such as this. S. REP. NO. 107-146 at 13–15, 2002 WL 32054437 (2002).

Furthermore, under *Blockburger*, charges under each of §§ 1001 and 1519 require proof of an element that charges under the other statute does not. For charges under § 1001(a)(2), as indicted in Counts 3, 5, 7, and 9, a jury is required to find Defendants made a false, fictitious, or fraudulent statement or representation; that specific falsity, fiction, or fraud was in relation to a material fact; and Defendants had the requisite intent to make such a materially false, fictitious, or fraudulent statement. 18 U.S.C. § 1001(a)(2). For charges under § 1519, as indicted by Counts

4, 6, 8, and 10, a jury must find Defendants altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry; such deception or destruction occurred in a record, document, or tangible object; and Defendants acted with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. 18 U.S.C. § 1519. While both pertain to false statements, a conviction under § 1001(a)(2) requires a jury to determine the false statement pertained to a material fact, which § 1519 does not necessitate. Similarly, while both require a specific *mens rea*, a conviction under § 1519 will be sustained only if the Defendant intended to impede, obstruct, or influence a federal investigation or administration of a federal agency; § 1001 only requires Defendants intend to make false, fictious, or fraudulent statements. It is possible a jury could find the Defendants intended to defraud without intending to impede, obstruct, or influence an investigation or administration, just as it is equally possible for a jury to conclude the Defendants made a false statement, but the falsity did not pertain to a material fact. Because these counts charge discrete crimes, the Indictment is not multiplicitous, even if it uses the same conduct for violations of both statutes. *Blockburger*, 284 U.S. at 304.

## C

Finally, Defendants argue throughout their motions that prosecution under the corporate contributions ban is unconstitutional in this circumstance. The Court has already discussed the distinctions between campaign contributions and campaign expenditures, how such expenditures are split between independent expenditures and coordinated expenditures, and how coordinated expenditures are treated under the law as campaign contributions. *See supra* Part II(B)(2). The Supreme Court of the United States has determined that regulating independent expenditures, both for individuals and corporations, violates the First Amendment, but has repeatedly upheld

restrictions on campaign contributions and coordinated expenditures.  *See e.g., Citizens United v. Fed. Election Comm.*, 558 U.S. 310 (2010); *Buckley v. Valeo*, 424 U.S. 1 (1976).

**1**

When individuals form a business, they can organize in a variety of ways.  These various organizations, such as sole proprietorships, joint ventures, partnerships, and limited partnerships, each offer different legal characteristics, restrictions, and protections for the business owner(s). 18 Am. Jur. 2d Corporations § 5.  As a product of statute, the corporation maintains an existence entirely different from an unincorporated business association.  *Id.*  Incorporation offers a business limited liability, maintaining an independent identity from shareholders or members. *Id.*  Such an entity is not a sole proprietorship, as a sole proprietorship has no legal existence apart from the owner and offers the owner no limited liability.  *Id.*  "Separate corporate identity is a privilege conferred by law to further important underlying policies, such as the promotion of commerce and industrial growth."  18 Am. Jur. 2d Corporations § 45.

Because of this privilege, laws and regulations impose different standards for individuals and corporations.  "After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).  Neither Defendant denies the corporate status of S.R. Holding Co., but instead argues that S.R. Holding Co. should not be treated as a corporation for the purposes of campaign finance law because it is wholly owned and operated by Mr. Lundergan and his immediate family.  [R. 33-1.]  However, Defendants do not offer, and the Court cannot find, any case law supporting such a departure from established corporate treatment.  Mr. Lundergan and his family *chose* the corporate model for this business and

therefore must abide by the laws applicable to corporations. The Indictment alleges payments from the accounts of S.R. Holding Co., the corporation, not payments from the Lundergan family members as individuals, and thus the payments are subject to corporate laws.

Having declined to distinguish Mr. Lundergan's business as anything other than a corporation, the ban on corporate contributions applies to S.R. Holding Co. Complete bans on direct contributions are generally upheld in situations where the corporation can still participate in the political process through a political action committee (PAC) or a separate segregated fund (SSF). *See, e.g., Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 149, 163 (2003); *Buckley v. Valeo*, 424 U.S. 1, 29, n. 31 (1976). Corporate contributions can be used "as conduits for circumvention of [valid] contribution limits," because members or owners can use the corporate form to divert money in a way that "exceed[s] the bounds imposed on their own contributions." *Beaumont*, 539 U.S. at 155. This Court previously determined that even after *Citizens United*, the *Beaumont* decision upholding the ban on corporate contributions remains controlling precedent. *Protect My Check, Inc. v. Dilger*, 176 F.Supp.3d 685, 696–97 (E.D. Ky. 2016).

Furthermore, the Court sees no legal reason to carve out an exception to the corporate contributions ban for corporations held by immediate family members. The Government has a recognized interest in preventing *quid pro quo* corruption and the appearance thereof, which does not disappear simply because the corporation is owned by a candidate's family. *Buckley*, 424 U.S. at 26–27. As the *Buckley* Court recognized, the limits of individual contributions are not suspended for members of a candidate's family: "Although the risk of improper influence is somewhat diminished in this case of large contributions from immediate family members, we cannot say that the danger is sufficiently reduced to bar Congress from subjecting family members to the same limitations as nonfamily contributors." *Id*. at 53 n. 59. The Court finds the

same logic extends here.  Just as the individual contributions limit is not modified for family members, nor should the corporate contributions ban be lifted simply because the owners of the corporation are family members to the candidate.

## 2

The Defendants further argue that the payments alleged in the Indictment are intrafamilial contributions and limiting intrafamilial contributions violates the Constitution.  However, the Indictment alleges payments from S.R. Holding Co., not from Mr. Lundergan personally.  [R. 1.] As stated previously, S.R. Holding Co. is subject to the statutory ban on corporate contributions to federal elections, and such a ban is not lifted simply because Mr. Lundergan was an immediate family member of the Candidate.  *See supra* Part II(C)(1).  Again, the Supreme Court has affirmed that these limits extend to immediate family members, noting that the risk of corruption, though diminished, does not disappear simply because the contributions come from immediate family members.  *Id.*, *Buckley v. Valeo*, 424 U.S. 1, 53, n. 59 (1976).  While Mr. Lundergan and Mr. Emmons claim a "growing body of jurisprudence on campaign finance law supports the conclusion that limiting intrafamilial contributions to candidates . . . violates the First Amendment," neither Defendant cites case law to support such supposed jurisprudence.  [R. 33-1 at 15–19.]  Instead, the repeated affirmations from the Supreme Court on various contributions bans and regulations indicate that such limitations do not violate the First Amendment.  *See e.g.*, *Buckley*, 424 U.S. 1; *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

Nor do the limitations create impermissible disparate treatment between personal funds and the funds from family members.  As stated several times in this Order, the Government has an important interest in preventing *quid pro quo* corruption, and such corruption is constitutionally curtailed by imposing limitations on the amount of contributions to the

campaign.  There is no such concern when a candidate contributes to her own campaign, as there is no risk of *quid pro quo* corruption that arises from those contributions.  Mr. Lundergan and Mr. Emmons argue there is no such risk when the contributions come from family members, but examples from other circuits indicate such a risk is severe.  *See, e.g., United States v. Reed*, 908 F.3d 102, 125 (5th Cir. 2018); *United States v. Skelos*, 707 F. App'x 733, 739 (2d Cir. 2017).  This interest differentiates personal funds from funds given by family members and gives ample justification for the disparate treatment.  *See generally, Buckley v. Valeo*, 424 U.S. 1 (1976).

Finally, the Defendants argue Mr. Lundergan has established a "pattern of gift-giving," and prosecution in this circumstance would violate due process.  [R. 33-1 at 20–26.]  A candidate's "personal funds," not subject to contribution limits, include gifts from members of her family which were "customarily received by the candidate prior to the beginning of the election cycle."  52 U.S.C. § 30101(26)(B)(vi).  The Defendants argue that Mr. Lundergan customarily gave gifts to Candidate A "worth several times more than the expenses in question in this matter."  [R. 33-1 at 23, n. 15.]  This may be true.  But the Indictment is not concerned with the funds provided by Mr. Lundergan to Candidate A, the Indictment involves payments made by a corporation, a legally separate entity with separate bank accounts from Mr. Lundergan.  [R. 1.]  There is no "pattern of gift giving" that can occur by a corporation to a candidate, as a corporation cannot legally be a family member.  Further argument by the Defendants suggesting "a strong basis for finding [these payments] to be [the Candidate's] personal funds" is an additional attempt to litigate the facts, which the Court again declines to consider.

## III

Mr. Lundergan and Mr. Emmons submitted over two hundred and fifty pages of briefing in an attempt to dismiss the Indictment against them, most of which were devoted to contesting the facts alleged in the Indictment and proclaiming their lack of required *mens rea*. However, a motion to dismiss is not the vehicle for which to litigate such claims, as those facts must be determined by a jury. *Universal Milk Bottle Service v. United States*, 188 F.2d 959, 962 (6th Cir. 1951). Additionally, the Defendants argue that any prosecution here would be unconstitutional, though current precedent forecloses this Court from so finding. After considering all arguments presented by the parties and scrutinizing the allegations made by the Government, the Court finds the Indictment is constitutionally sufficient to charge the Defendants with violations of 18 U.S.C. §§ 2, 371, 1001, and 1519, as well as violations of 52 U.S.C. §§ 30118 and 30109(d)(1)(A)(i). Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Dale C. Emmons's Motion for Joinder [**R. 41**] is **GRANTED**;

2. Defendant Dale C. Emmons's Motion for Joinder [**R. 65**] is **GRANTED**;

3. Defendants' Motion to Dismiss (Intrafamilial Contributions) [**R. 33**] is **DENIED**;

4. Defendants' Motion to Dismiss (No Coordination) [**R. 34**] is **DENIED**;

5. Defendants' Motion to Dismiss (Vendor Payments) [**R. 35**] is **DENIED;**

6. Defendants' Motion to Dismiss 1001 and 1519 Counts [**R. 36**] is **DENIED**;

7. Defendants' Motion to Dismiss Multiplicitous Counts [**R. 37**] is **DENIED**; and

8. Defendants' Motion to Dismiss (Contributions Ban) [**R. 38**] is **DENIED**.

This the 18th day of March, 2019.

Gregory F. Van Tatenhove
United States District Judge