UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 5:18-cr-00106-GFVT-MAS-1 |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GERALD G. LUNDERGAN, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court now are three motions relating to a claim of privilege over certain documents related to this matter. While attorney-client privilege promotes a broad public interest in allowing "full and frank communication between attorneys and their clients," such a privilege is not absolute, and it does not include all communication between clients and their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). Defendant Gerald G. Lundergan, as well as the Alison for Kentucky Campaign Committee, have requested various protections to exclude materials they believe are privileged. [R. 105; R. 107; R. 108.] Because the movants have not established that the Government actually possesses any documents that remain privileged, these motions are denied.

**I**

The Government began investigations into Mr. Lundergan's involvement in alleged campaign finance violations during the 2014 United States Senate Race. [R. 134 at 2.] Primarily, the United States utilized search warrants and subpoenas to review emails and financial documents for potential evidence. *Id*. Anticipating issues with attorney-client privilege, both Defendants furnished a list of attorneys and their email addresses to the

Government to allow the Government to filter out all communications with those attorneys. [R. 134-3.]

Two categories of materials are at issue here: documents and devices. [R. 174 at 60–61.] The documents were uploaded to the Government's review software, Relativity, where it was reviewed by a taint team with no communication with the prosecution team. *Id*. The software and the taint team reviewed the documents and filtered for privilege, after which time those documents were provided to the Alison for Kentucky Campaign Committee, who flagged additional documents for privilege. *Id*. The prosecution team did not have access to any of these privileged documents. *Id*.

Additionally, electronic devices were seized pursuant to a search warrant. *Id*. at 63. The Federal Bureau of Investigation seized the devices, uploaded the content of those devices to their software, and then ran keyword searches on the devices for any potential documents germane to the investigation. *Id*. After this, the FBI removed the devices and the content of the devices from their system and replaced the devices in evidence. *Id*. at 64. The Government kept copies only of information related to the investigation; all other information is stored on these devices and kept in the possession of the FBI, not accessible by the prosecution team. *Id*. at 64–67. That subset of data deemed germane was then migrated to Relativity, where the Government's taint team reviewed for privilege. *Id*. Anything found to be irrelevant to the investigation, or that was determined to be privileged, was not accessible by the prosecution team. *Id*. The Government did, however, make the entire device available to the Defendants and their counsel. [R. 46.]

Mr. Lundergan is unhappy with this process and believes there are privileged documents that the prosecution team was able to access. [R. 108.] He argues for an evidentiary hearing akin to the hearing in *Kastigar v. United States*. [R. 107.] Additionally, the Alison for Kentucky

Campaign Committee has requested permission to intervene and seek a protective order. [R. 105.]

## II

As the oldest established privilege, attorney-client privilege serves as "a necessary foundation for the adversarial system of justice." *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005). This privilege exists to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

But not all communications between a lawyer and a client are privileged, and whether the privilege applies is a question of both law and fact. *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). As an exception to the general rule that all relevant evidence is admissible, the attorney-client privilege is narrowly construed. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983). In the Sixth Circuit, attorney-client privilege is established by the following elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Id*. at 355–56 (citations omitted). The party asserting attorney-client privilege bears the burden of establishing the existence of that privilege. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). This privilege does not shield from disclosure *any* statements made by the client or the attorney in the presence of a third party. *Reed*, 134 F.3d at 357 (6th Cir. 1998). Furthermore, such privilege can be waived, explicitly or implicitly, when an individual or

3

corporation discloses communications to third parties or documents for inspection. *Dakota*, 197 F.3d at 825–26.

## A

To begin, the Alison for Kentucky Senate Campaign Committee (Committee) has moved for leave to intervene and file a motion for a protective order. [R. 105.] It is rare for a third party to intervene in a criminal action, and thus little authority exists on its appropriateness. Some courts have permitted intervention when the third party is affected by disclosure or subpoena of their privileged information. *United States v. RMI Co.*, 599 F.2d 1183, 1186–87 (3rd Cir. 1979) (allowing intervention of a party who was served the government's motion to disclose grand jury documents, without the party moving to intervene); *United States v. Crawford Enterprises*, 735 F.2d 174, 176 (5th Cir. 1984) (remanding to district court for consideration of defendant's motion to intervene when they provided privileged documents pursuant to a subpoena and were affected by the government disclosing the documents to other parties); *United States v. Cuthbertson*, 651 F.2d 189, 193 (3d Cir. 1981) (allowing intervention of a party who was not subpoenaed, but "assert[ed] a substantial claim of privilege" over documents in the district court's possession). *United States v. Feeney*, 641 F.2d 821, 824 (10th Cir. 1981) (withdrawing a party who had intervened when the protective order was withdrawn).

These issues, however, tend to arise when the interests of the third party are separate from the interests of both the Government and the defendants. While the Court notes that the attorney client privilege here belongs to the Committee, and the Committee alone can assert privilege, the Committee conceded that their requested remedy was also in Mr. Lundergan's interest. [R. 174 at 51.] So, while the Court has been unable to find strong support for permitting the Committee's motion to intervene, the Court assumes intervention for the purpose

4

of reviewing the Committee's request for a protective order.  Finding a protective order is not warranted here, the Court denies the motion in its entirety.

The Committee believes that the United States possesses certain materials subject to attorney-client and/or work product privileges.  [R. 105-1 at 1.]  As an initial matter, documents may only be protected by work product privilege if those documents were "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3)(A); *see also South Fifth Towers, LLC, v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 405 (6th Cir. 2019).  The Sixth Circuit employs a two-part test: "whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose" plus "whether that subjective anticipation was objectively reasonable."  *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).  The Committee explicitly states that these materials were sought from counsel "regarding various matters related to conducting a federal campaign, including guidance on federal campaign contributions and reporting."  [R. 105-1 at 2–3.]  These documents were not prepared in anticipation of litigation, but rather were "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation," and are therefore not covered by the work product privilege.  *Roxworthy*, 457 F.3d at 594.

As to whether the attorney-client privilege applies in this circumstance, the Committee does not indicate what materials, if any, they believe are privileged.  The Committee gives only a conclusory statement that "the Government has retained and reviewed privileged materials belonging to the Committee."  [R. 105-1 at 3.]  The party asserting attorney-client privilege bears the burden of establishing the existence of that privilege.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  The Committee's unsupported accusations that the Government has, and plans to use, privileged materials, without identifying those materials or providing any

5

explanation as to why those materials are privileged, is simply insufficient. *Id*. Therefore, the Court finds that a protective order would not be appropriate in this instance and denies the Committee's motion to intervene.

**B**

Next, Mr. Lundergan moves to exclude any evidence obtained in violation of privileges. [R. 108.] Though Mr. Lundergan asserts both attorney-client privilege and work product privilege, the Court notes that Mr. Lundergan provides no claim that these materials meet the criteria for work product privilege. *Id*. He makes no indication that these documents were "created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose" or "whether that subjective anticipation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Thus, he has not met the burden to demonstrate these documents are covered by work-product privilege, and his motion as it relates to work-product privilege is denied. *Id.* at 593.

The exclusion of evidence is an appropriate remedy for disclosure of privileged documents. *United States v. Gott*, 626 F. App'x 117, 120 (6th Cir. 2015). But to achieve this end, Mr. Lundergan bears the burden of establishing the existence of that privilege. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). He has provided an extensive list of documents he believes to be privileged, but he accompanies that list only by the claim of privilege plus the addresses of the sender and recipients of the email. [R. 108-1; R. 145-1.] Furthermore, while he claims "the Government fully intends to elicit testimony and introduce other evidence" that is protected by privilege, he includes no facts to support this assertion. [R. 108 at 6–7.]

Nonetheless, the Court reviewed the logs submitted by Mr. Lundergan. He filed a privilege log along with his motion [R. 108-1] and supplemented that log after the Court held a hearing [R. 145-1]. In both of these logs, Mr. Lundergan lists numerous documents accompanied by a Bates stamp that does not include "USA," but rather includes the name of a potential witness. [R. 108-1 at 2–30 R. 145-1 at 6–10.] The United States has not accessed these materials and has given no indication they plan to do so. [R. 134 at 7.] Thus, the Court finds no need at this juncture to grant a motion to exclude such a mass number of documents, as the Government cannot introduce documents to which they have no access.

The remaining documents listed include USA Bates stamps, indicating that the United States produced these documents to Mr. Lundergan. [R. 108-1 at 30–35; R. 145-1 at 6–10.] Some of the documents were provided in response to a grand jury subpoena while others were a result of a search warrant. [R. 134 at 7.] Documents produced in response to a subpoena were screened by the witness's attorney for privilege. *Id*. Materials collected by a search warrant were filtered by the taint team. *Id*.

Mr. Lundergan provides no evidence that the Government's taint team was insufficient or that the Government improperly possessed privileged documents. [*See* R. 108 at 6 (including no evidence to support claims that the failures of the taint team resulted in the Government's possession of materials).] The Court must ensure that the "application of the privilege [does] not exceed that which is necessary to effect the policy considerations underlying the privilege." *In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447, 451 (6th Cir. 1983). Quite simply, the request made by Mr. Lundergan to exclude a vast number of documents is overbroad and premature at this stage. However, if the necessity arises, counsel remains free to object to the introduction of this evidence on the basis of privilege.

## C

The Court ends here with Mr. Lundergan's request for a *Kastigar*-like hearing. [R. 107.] *Kastigar v. United States* involved petitioners who had been subpoenaed before a federal grand jury and compelled to testify under a grant of immunity. 406 U.S. 441, 442 (1972). The petitioners appeared but refused to testify asserting Fifth Amendment privilege. *Id*. As part of the decision, the Supreme Court determined that a grant of immunity, which prohibits the prosecution from using the compelled testimony against the witness in any respect, was sufficient to compel a witness's testimony over a claim of Fifth Amendment privilege. *Id*. at 453. Because of this total prohibition, when a question arises about whether the evidence was collected under a grant of immunity, the Government must prove more than a negation of taint: it must affirmatively prove that their evidence came from an independent, legitimate source wholly independent from the compelled testimony. *Id*. at 460.

The Sixth Circuit suggested, in dicta, that a *Kastigar*-like hearing might be appropriate in the context of privileged materials provided to a grand jury. *In re Grand Jury Subpoenas*, 454 F.3d 511, 517 (6th Cir. 2006). Here, a question arose about the Government's procedures to determine which materials were protected by attorney client privilege. *Id*. at 513. The topic was revisited several years later, when a criminal defendant requested a *Kastigar* hearing requiring the Government prove its evidence was not a result of privileged materials. *United States v. Warshak*, 631 F.3d 266, 292 (6th Cir. 2010). Because the defendant had "raised enough of a question about the amount of time [the case agent] possessed privileged data," the district court found a hearing appropriate. *Id*. Ultimately, however, the Sixth Circuit determined that when evidence was not the product of compelled testimony, and particularly when there is no indication that the Government directly used privileged communications in their investigation, a

full *Kastigar* hearing is not required. *Id*. at 294–95. When potentially privileged documents are seized by the Government through subpoenas or search warrants, rather than through compelled testimony, the use of a "taint team" is sufficient to protect privilege. *United States v. Coffman*, 574 F. App'x 541, 565 (6th Cir. 2014) (citing *In re Grand Jury Subpoenas*, 454 F.3d at 522).

The Court notes that a *Kastigar* hearing would not determine whether a specific document is privileged, but rather if the Government used privileged communications to further their investigation. However, Mr. Lundergan has not presented any evidence of misconduct or negligence, and has therefore failed to raise a sufficient question as to the Government's handling of potentially privileged information. *Warshak*, 631 F.3d at 292. As a hearing is not required, and the Court finds the Government's use of a taint team to be proper here, the Court finds a *Kastigar* hearing unnecessary and denies the motion.

## III

The movants here rely on bare assertions that the Government has improperly accessed privileged materials, without any specific evidence of such misconduct. Furthermore, they expect the Court to accept their claim of privilege without more than a mere statement that the communication includes content "regarding legal advice." [*See generally* R. 108-1.] Exclusion on these grounds is not necessary. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Gerald G. Lundergan's Motion for Leave to File Supplemental Privilege Log Under Seal [**R. 145**] is **GRANTED**;

2. Alison for Kentucky Campaign Committee's Motion to Intervene and Motion for Protective Order [**R. 105**] is **DENIED**;

3. Defendant Gerald G. Lundergan's Motion for a *Kastigar*-Like Hearing [**R. 107**] is **DENIED**; and

4. Defendant Gerald G. Lundergan's Motion to Exclude Privileged Evidence [**R. 108**] is **DENIED**.

This the 1st day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge