UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:18-cr-00106-GFVT-MAS |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GERALD G. LUNDERGAN and | ) | **&** |
| DALE C. EMMONS, | ) | **ORDER** |
| | ) | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

During the Federal Grand Jury investigation of this matter, the Grand Jury subpoenaed witnesses and evidence concerning alleged misconduct arising out of the 2011 and 2015 Kentucky Secretary of State campaigns. Because such conduct was not indicted here, Defendant Gerald G. Lundergan, joined by Defendant Dale C. Emmons, seeks to suppress this evidence from trial, challenging the grand jury's authority to investigate this conduct and seeks to exclude the evidence under Federal Rules of Criminal Procedure 404(b) and 403. [R. 84; R. 85.] Because the Grand Jury does have this authority, and because the evidence is properly admissible under both Rules 404(b) and 403, these motions are **DENIED**.

I

Mr. Gerald G. Lundergan and Mr. Dale C. Emmons were indicted last fall on counts of conspiracy to defraud the United States, making unlawful campaign contributions, making false statements, and falsification of a record or document. [R. 1.] The indictment alleges, generally, that Mr. Lundergan and Mr. Emmons used their corporations to illegally funnel money into Candidate A's 2014 campaign for United States Senate. *Id*.

In order to prove their case at trial, the United States seeks to introduce evidence that Mr. Lundergan paid campaign consultants and vendors using funds from his corporation, S.R. Holding Co., Inc., for services rendered during Candidate A's campaigns for a Kentucky state office in both 2011 and 2015. [R. 90 at 1–2.] The Government claims that this evidence is relevant to prove Defendants' "intent, plan, preparation, knowledge, and absence of mistake." *Id*. at 5. However, neither Mr. Lundergan nor Mr. Emmons was ever indicted for these acts. [R. 84 at 1–2; R. 91 at 6.] Mr. Lundergan strongly objects to introduction of this evidence, filing both a motion to exclude it pursuant to Federal Rules of Criminal Procedure 403 and 404(b), as well as a motion to suppress it. [R. 84; R. 85.] Mr. Emmons has joined only Mr. Lundergan's Motion to Exclude. [R. 92; R. 93.]

Following full briefing of these motions, and a week after the Final Pretrial Conference, Mr. Lundergan moved to supplement his motion to exclude. [R. 161.] As grounds for this, Mr. Lundergan suggests that the Government did not timely file their notice of intent to introduce evidence pursuant to Rule 404(b). *Id*. The Government filed this notice on June 18, 2019. [R. 90.] The Standing Pretrial and Trial Management Order (Criminal) requires the Government only "provide reasonable notice in advance of trial." [R. 18 at 3.] The Court believes the Government satisfied this requirement by filing its notice over seven weeks before trial is scheduled to begin. Furthermore, Mr. Lundergan's motion was filed nearly six weeks after the Government filed its notice. He suggests that the supplement was necessary because he was given only three days to file a reply, however, at no point did he request additional time. Nonetheless, the Court permits Mr. Lundergan to supplement his motion and finds that none of his additional arguments have merit.

## II

### A

Generally, the Government may not introduce evidence of other bad acts at trial because the introduction of such evidence may lead to an improper guilty verdict. Fed. R. Evid. 404.[1] In some limited circumstances, however, the Government may introduce evidence of past conduct if the conduct is sufficiently tied to the presently charged offense. To determine whether evidence of a crime, wrong, or other bad act is admissible, the Court must determine if sufficient evidence exists that the act in question occurred, whether the evidence of that act is probative of a material issue other than the defendant's character, and whether the probative value of that evidence is substantially outweighed by its potential prejudicial effect. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

However, background evidence, also known as *res gestae* evidence, provides an exception. As has been explained by the Sixth Circuit:

> [p]roper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

---

[1] The Court notes here that Rule 404(b) is often referred to as the "prior bad acts" rule. The rule itself, however, does not include the limitation that the acts be prior: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This is particularly relevant here, where the 2011 alleged conduct occurred prior to both the indicted conduct and the indictment, while the 2015 alleged conduct occurred before the indictment, but after the indicted conduct. In his supplemental motion, Mr. Lundergan suggests that the 2015 acts should be excluded because they cannot possibly prove state of mind for 2014 conduct. [R. 161 at 9–10.] However, he offers no authority, and the Court has been unable to find authority, supporting this request. Evidence of subsequent acts is admissible as well, so long as it meets the requirements of Rule 404(b)(2). *See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). Nothing in the language of the rule limits application only to conduct occurring prior to the indicted conduct, and therefore, the Court analyzes the admissibility of both 2011 evidence and 2015 evidence through the same lens.

*United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (quoting *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000)).  When *res gestae* evidence is presented in this way, it is not subject to the strictures of Rule 404(b).  *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (citing *United States v. Clay,* 667 F.3d 689, 697 (6th Cir. 2012)).  The Government argues that evidence of Defendants' contributions to the 2011 and 2015 campaigns is *res gestae* evidence, but in the alternative, would be admissible under Rule 404(b) as well.  [R. 91 at 8–9.]

First, the Court must consider whether the evidence the Government seeks to introduce has a sufficient "causal, temporal, or spatial connection with the charged offense."  *Marrero*, 651 F.3d at 471 (quoting *Hardy,* 228 F.3d at 748).  The evidence here took place in 2011 and 2015, several years before and after the indicted conduct allegedly occurred.  However, by nature, crimes involving elections cannot occur every day.  *Adams*, 722 F.3d at 811.  While these actions may have been seen as remote for other crimes, Candidate A's campaigns in 2011 and 2015 directly proceeded and succeeded her campaign in 2014.  [R. 91 at 13.]  These alleged acts, performed in sequential campaigns for Candidate A, therefore share a temporal connection.  *See Adams*, 722 F.3d at 811.

Furthermore, these alleged acts from 2011 and 2015 involve Mr. Lundergan, Mr. Emmons, Candidate A, and Person C, on whom the Government intends to call for testimony about these acts.  [R. 91 at 9–13.]  These are the same actors involved in the indicted charges, engaging in the same conduct as alleged in the indictment.  *Id*.  Thus, evidence of previous contributions made by both Mr. Lundergan's and Mr. Emmons's companies to and on behalf of Candidate A's various campaigns helps to "complete the story" of the charged conspiracy, even though the unindicted acts occurred in other campaigns.  *See Adams*, 722 F.3d at 811 (permitting *res gestae* evidence of vote buying twenty years prior to the alleged vote buying in the

indictment because the evidence involved the same actors and same conduct). Therefore, evidence of 2011 contributions and 2015 contributions share a temporal and causal connection with the charged offenses regarding the alleged 2014 contributions.

Defendants argue that the supposed 2011 and 2015 acts cannot be causally connected because Candidate A ran for state office in 2011 and 2015, therefore, any supposed bad acts occurring during those campaigns could not be the same federal violations for which Defendants are currently charged. [R. 84-1 at 5–7.] Previously, this Court had a chance to consider Kentucky's campaign finance laws relating to corporations and LLCs in 2016. *Protect My Check, Inc. v. Dilger*, 176 F. Supp. 3d 685 (E.D. Ky. 2016). Prior to that decision on March 31, 2016, and therefore during the time of Candidate A's campaigns in 2011 and 2015, the Kentucky Constitution prohibited corporations from using money or other things of value to influence elections. *Id*. at 687. Corporations that violated this prohibition would forfeit their right to do business in Kentucky. *Id*. Corporations, as well as their officers and employees, who *knowingly* violated this provision faced charges of a Class D Felony and a fine up to $10,000. *Id*. Therefore, as it relates to contributions from corporations, at the time of the 2011 and 2015 campaigns, Kentucky law banned corporate contributions in state elections just the same as federal law banned corporate contributions in federal elections. *Compare id*., *with* 52 U.S.C. § 30118. The alleged acts of 2011 and 2015, namely making impermissible campaign contributions by a corporation to a state election, thus share a causal connection with the indicted 2014 acts, namely making impermissible campaign contributions by a corporation to a federal election, even though the campaigns involved both state and federal offices.

**B**

Even if this proposed evidence were not admissible as *res gestae* evidence, testimony concerning Defendants' contributions to Candidate A's 2011 and 2015 campaigns would still be admissible under Rule 404(b). As stated previously, to determine whether evidence of another bad act is admissible, the Court must determine if sufficient evidence exists that the act in question occurred, whether the evidence of that act is probative of a material issue other than the defendant's character, and whether the probative value of that evidence is substantially outweighed by its potential prejudicial effect. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

As a preliminary matter, the Government is not required to prove the acts occurred by a preponderance of the evidence, much less beyond a reasonable doubt. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008). The Government is only required to provide substantiation for that evidence. *Id*. Here, the Government anticipates introducing testimony from Person C, as well as evidence of payments and a financial analysis, satisfying this requirement for substantiation. [R. 91 at 11–12.]

Next, the Court considers whether this evidence is probative of a material issue other than Defendants' characters. *Jenkins*, 345 F.3d at 937. This is a three-part inquiry. First, is the evidence is to be offered for an admissible purpose? Second, is that purpose material to the case? And, finally, is the evidence probative for that purpose? *Id*. The crimes with which Defendants are charged require the Government to prove that they acted "knowingly and voluntarily." [R. 1.] When this is required of the United States, Rule 404(b) permits admission of evidence of similar schemes to demonstrate intent, knowledge, or absence of mistake. *United States v. English*, 785 F.3d 1052, 1055 (6th Cir. 2015) (allowing evidence of defendant's involvement in

prior Medicare fraud schemes to demonstrate absence of mistake in indicted Medicare fraud charges).

Here, the Government seeks to introduce the evidence pertaining to 2011 and 2015 contributions to prove Defendants' intent, knowledge, or absence of mistake, a material issue, in the alleged conduct relating to the 2014 campaign, an admissible purpose. [R. 91 at 15.] Other impermissible campaign contributions would be probative of the intent, knowledge, or absence of mistake in committing the alleged acts at issue here. *See English*, 785 F.3d at 1055. Therefore, this evidence is also admissible under the guidelines of Rule 404(b).

## C

In his supplement, Mr. Lundergan identifies specific evidence in the Government's notice to which he objects introduction. [R. 161.] First, he claims that Government failed to produce sufficient evidence that the transactions listed between Mr. Lundergan and Mr. Emmons were related to the 2011 or 2015 campaigns. *Id*. at 5–6. However, the Government is not required to present its proof at this stage. The Government states, "At trial, the United States intends to introduce evidence concerning each of these transactions and reflecting Emmons's and Person C's contemporaneous work performed for the 2011 and 2015 campaigns." [R. 90 at 5.] Even at trial, the Government is not required to prove the acts occurred by a preponderance of the evidence, much less beyond a reasonable doubt. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008). The Government is only required to provide substantiation for that evidence. *Id*. Having identified such substantiation and indicated that such was provided to the Defendant in discovery, the United States has satisfied its burden thus far.

Next, Mr. Lundergan seeks to exclude evidence of LLC contributions because they are not illegal corporate campaign contributions. [R. 161 at 7–8.] To the extent Mr. Lundergan

7

argues that the contributions of an LLC cannot be probative of corporate contributions because the nature of the transaction is different, the Sixth Circuit does not require evidence of other acts to be identical to those elements of the charged offense. *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (quoting *United States v. LaVictor*, 848, F.3d 428, 447 (6th Cir. 2017)). To the extent he argues such acts should be excluded because they are not illegal, Rule 404(b) does not draw such a distinction. Rule 404(b) encompasses crimes, wrongs, and *other* acts, not just illegal ones. The Government seeks to introduce this evidence to show, not just that "he knew and intended to use these same methods to contribute corporate money," but also to demonstrate Defendants' plans and preparations by evidencing commonality among the methods. [R. 103 at 6.] Additionally, the Government lists the LLC contributions to refute any argument that the charged conduct was unrelated to the Campaign, another permissive purpose under Rule 404(b). *Id*.

Finally, Mr. Lundergan argues that the introduction of 2015 conduct occurred after the indicted conduct, and therefore could not logically demonstrate his state of mind in 2014. [R. 161 at 9–10.] The Sixth Circuit disagrees. Subsequent acts can still be used to demonstrate identity, modus operandi, consciousness of guilt, intent, plan, scheme, or absence of mistake or accident. *See e.g. United States v. Poulson*, 655 F.3d 492, 508–09 (6th Cir. 2010); *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006); *United States v. Ausmus*, 774 F.2d 722, 728 (6th Cir. 1985). Having already determined that the Government plans to use this evidence for a permissible purpose, the mere fact that the other acts occurred after the indicted conduct does not render them inadmissible.

# D

Having determined the evidence of 2011 and 2015 acts to be otherwise admissible, the Court must still find that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence pursuant to Federal Rule of Evidence 403. *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Specifically, the Court must determine whether the probative value of the evidence is *substantially* outweighed by the danger of unfair prejudice. *Id.* at 440. Only in those instances where unfair prejudice is that much weightier than probativeness does this stage of the analysis require exclusion. A certain degree of prejudice is presumed to occur when "other acts" evidence is introduced, even if for a legitimate purpose. "[R]egardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person . . . and that if he 'did it before he probably did it again.'" "[F]inally, the district court must determine whether the 'other acts' evidence is more prejudicial than probative." *United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008) (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)). As a result, the Court must carefully consider the prejudice inherent in each piece of contested criminal history evidence when compared to its corresponding probativeness before ruling on its admissibility, and only in instances where there is a *substantial* risk of prejudice is it proper to exclude evidence on this ground. The Court has broad discretion when ruling on admissibility. *Journey Acquisition–II L.P. v. EQT Production Company*, 830 F.3d 444, 458 (6th Cir. 2016).

Mr. Lundergan and Mr. Emmons argue that the probative value of evidence concerning contributions from the 2011 and 2015 campaigns would be far outweighed by the danger of unfair prejudice, specifically, a propensity to violate campaign finance laws. [R. 84-1 at 8; R.

9

161 at 8–9.] Furthermore, the Defendants believe that any resulting prejudice from that evidence would not be cured by a limiting instruction to the jury. *Id*. However, knowledge and intent of his actions is the central issue of this trial. Thus, any evidence as to Defendants' true intentions is highly probative, and potential prejudice *can* be mitigated by a limiting instruction. *United States v. English*, 785 F.3d 1052, 1055 (6th Cir. 2015). Accordingly, any danger of unfair prejudice, while possible, does not *substantially* outweigh the probative value of this evidence. *Churn*, 800 F.3d at 779.

Finally, any argument that presenting this evidence would create a "lengthy and confusing trial within a trial' is unfounded. [*See* R. 84-1 at 8.] As stated before, the Government is not required to prove these acts occurred by a preponderance of the evidence or beyond a reasonable doubt. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008). The Government must only substantiate such evidence, here, by various records and financial analyses in addition to witness testimony. *Id*. Such presentation of evidence will not require a "trial within a trial," and the Court can take judicial notice of the Kentucky law in effect during the 2011 and 2015 campaigns. Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also United States v. Maken*, 510 F.3d 654, 660 (6th Cir. 2007) (taking judicial notice of Ohio tax provisions to determine whether defendant's nonpayment of state taxes constituted an offense for which he could be incarcerated).

E

Additionally, Mr. Lundergan has filed a motion to suppress evidence of these contributions in 2011 and 2015, claiming that the federal grand jury improperly used its

investigative powers to obtain evidence of state crimes. [R. 85.] He argues that the federal grand jury had the power only to investigate conduct relating to the 2014 United States Senate Campaign, but no authority to investigate conduct related to the 2011 and 2015 campaigns.

A grand jury has broad investigatory powers. *United States v. R. Enters., Inc.*, 498 U.S. 292, 297–99 (1991). "The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *Id*. at 297. This necessarily means that the evidentiary rules applicable to trials do not restrict grand jury investigations in the same way. *Id*. at 298 (citing *Costello v. United States*, 350 U.S. 359 (1956); *United States v. Calandra*, 414 U.S. 338 (1974)). As Mr. Lundergan correctly points out, the powers of a grand jury are not unlimited, however, such limits exist only by privileges extended by the Constitution, statutes, or common law. *United States v. Calandra*, 414 U.S. 338, 346 (1974). For example, a grand jury cannot use evidence collected in violation of the Fourth Amendment, nor can a grand jury compel a witness to answer questions in violation of the Fifth Amendment unless that witness has been granted immunity. *Id*. Nor may grand juries engage in "arbitrary fishing expeditions," or "select targets of investigation out of malice or an intent to harass." *R. Enters., Inc.*, 498 U.S. at 299.

Mr. Lundergan asserts no such privilege in this situation. Instead, he argues that because the United States Attorney could not charge him with violations of Kentucky law, the grand jury could not subpoena evidence relating to such potential violations. [R. 85-1 at 9–12.] Mr. Lundergan does not provide, and the Court cannot find, any authority suggesting the grand jury cannot ever subpoena evidence of state law violations. It is true the United States cannot charge Mr. Lundergan with state law crimes. However, as this Court has already stated, the alleged acts involved in 2011 and 2015 relate strongly to the indicted activity of 2014. Knowledge and intent

11

of those alleged actions is the central issue of this trial, and the grand jury must necessarily be able to investigate whether they believe Mr. Lundergan knowingly violated Federal law, even if that means investigating potential violations of state law. *See Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) ("A grand jury investigation 'is not fully carried out until ever available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed. *United States v. Stone*, 429 F.2d 138, 140 (2d 1970). Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors.")

Finally, Mr. Lundergan challenges the subpoenas on First Amendment grounds, but offers no controlling authority to support his position. [R. 85-1 at 12–17; R. 154.] The First Amendment concerns he cites appear only when a grand jury had subpoenaed lists of all contributors to a political campaign or all members and agents of an organization. *See N.A.A.C.P. v. Alabama*, 357 U.S. 449 (1958); *Pollard v. Roberts*, 283 F. Supp. 248 (E.D. Ark. 1968); *Fed Election Comm'n v. Machinists Non-Partisan Political League*, 655 F.2d 380 (D.C. Cir. 1981); *Fed. Election Comm'n v. Larouche Campaign*, 817 F.2d 233 (2d Cir. 1987); *Kalkstein v. DiNapoli*, 228 A.D.2d 28 (N.Y. 1997). Such is not the case here. This is not an investigation into the identities of various contributors of a political campaign, but rather a question about whether the contributions made by a single individual violated the law. The subpoenas issued in this matter, in contrast to those matters cited by Mr. Lundergan, were not issued by the Federal Election Commission to obtain lists of members of contributors. Additionally, Mr. Lundergan continues to argue that the statutes under which he is indicted are unconstitutional, which has already been addressed by this Court. [*See* R. 66.]

**III**

Defendants, no doubt, would prefer not to have evidence introduced concerning alleged campaign finance violations in 2011 and 2015. Unfortunately, such evidence is highly probative of the knowledge and intent necessary to prove the Government's case, and it is admissible with appropriate limiting instructions to the jury. Because of this, and because the Grand Jury had the authority to investigate this conduct, it is hereby **ORDERED** that Defendants' Joint Motion to Exclude Evidence of Other Acts under Rules 404(b) and 403 [**R. 84**] and Defendant Gerald G. Lundergan's Motion to Suppress Evidence Related to 2011 and 2015 Kentucky Secretary of State Elections [**R. 85**] are both **DENIED**. Mr. Lundergan's Motion to Supplement [**R. 161**] is **GRANTED IN PART** as to the request to supplement his motion but **DENIED IN PART** as to the request to exclude particular evidence.

This the 1st day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge