UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:18-cr-00106-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| GERALD G. LUNDERGAN and | ) | **ORDER** |
| DALE C. EMMONS, | ) | |
| | ) | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the United States' Motion *in Limine* to Exclude Improper Expert Testimony and Motion to Quash Subpoenas. [R. 120; R. 195.] The United States moves to exclude two of Mr. Lundergan's proposed expert witness, Mr. Michael Toner and Mr. Peter Nichols, on the grounds that their testimony is irrelevant and would consist of improper legal conclusions. *Id.* Seemingly in reaction to the chance his experts might be excluded, Mr. Lundergan issued subpoenas to three FEC officials on August 8, 2019. The United States moves to quash the subpoenas on the grounds that these witnesses would offer the same, impermissible legal testimony as defendant's proffered experts. [R. 195.] For the following reasons, the United States' motion to exclude is **DENIED**, while the motion to quash is **GRANTED**.

**I**

The parties are well-aware of the facts undergirding this case: defendant Gerald C. Lundergan, along with co-defendant Dale C. Emmons, are alleged to have violated various portions of the Federal Election Campaign Act (FECA). [*See* R. 1.] More specifically, the

United States alleges that Mr. Lundergan and co-defendant Dale C. Emmons participated in a scheme to funnel hundreds of thousands of dollars in corporate funds into the 2014 United States Senate Race. [R. 120-1 at 2.] In discharging their duty, the jurors in this case will be required to apply the facts presented at trial to the law of the FECA to determine whether or not the defendants' conduct violated that act.

The FECA is a myriad of rules and regulations, and the Federal Election Commission (FEC) is the administrative agency in charge of administering and enforcing it. *See Buckley v. Valeo*, 424 U.S. 1, 279 (1977). For that reason, on July 2, 2019, Mr. Lundergan sent notice to the United States of his intent to call expert witnesses Michael Toner and Peter Nichols, two former officials of the FEC. [R. 120-1 at 3.] Mr. Toner is "former Chairman of the Federal Election Comission" and "a leading practitioner in election and campaign finance law." [R. 120-2 at 2.] Mr. Nichols is "the owner of Common Sense Consulting, a consulting business that provides campaign finance compliance advice[.]" [R. 120-3 at 1.] Also, Mr. Nichols formerly worked in the FEC's Reports and Analysis Division. *Id.* at 2. The experts would testify to, broadly speaking, the relevant rules and regulations of the FECA.

The United States filed a Motion *in Limine* to exclude Mr. Toner and Mr. Nichols' testimony on the grounds that the experts' testimony "would consist of impermissible legal conclusions, does not rest upon a reliable methodology that can be objectively analyzed, would serve to confuse the jury, and is otherwise irrelevant to the issues properly in dispute at trial." [R. 120-1 at 7.] In contrast, Mr. Lundergan argues that such testimony is necessary to aid the jury because the regulations surrounding campaign finance law is extremely complex, and "would provide a necessary framework through which the jury can understand the alleged crime." [R. 136-1 at 5.]

2

At the close of voir dire, the Court heard further argument from the parties on the motion to exclude. At that time, counsel for Mr. Lundergan indicated that if this Court excluded the expert testimony, the defense team might issue subpoenas to current FEC officials to elicit similar testimony.

## II

### A

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The seminal case evaluating expert testimony is *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In that decision, the Supreme Court explained that a district court's gatekeeping responsibility is implicit in Rule 702, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Further, the Supreme Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *See id.* at 590, n. 8. These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation standards that should have been or were followed; and whether the theory or

technique is generally accepted within the scientific community. *Id.* at 592–94. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court determined that the gatekeeping obligation and subsequent factors established in *Daubert* apply with equal force to non-scientific experts. However, those factors are not definitive and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

From Rule 702 and *Daubert*, the Sixth Circuit has distilled a two-part test for admitting expert testimony. First, is the expert qualified and the testimony reliable? And second, is the evidence relevant and helpful to the trier of fact? *See, e.g., United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997). Notably, the Court's gatekeeping role under the case law "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 at 596. Whether or not to admit expert testimony is a matter over which the district court ultimately enjoys broad discretion. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010). Finally, as with any evidence, expert testimony is subject to the relevancy requirements of Rule 403. *Daubert*, 509 at 595.

**B**

**1**

Generally, "it does not help the jury for an expert to give testimony that 'states a legal standard or draws a legal conclusion by applying the law to the facts,' because it 'supplies the jury with no information other than the witness's view of how the verdict should read.'" *United*

4

*States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (citing *Weinstein's Federal Evidence* § 704.04[2][a] (2d ed. 2003)). However, district courts may admit such expert testimony "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury[.]" *Id.* In these narrow circumstances, expert testimony on legal issues is permissible "where [it] would assist in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court." *United States v. Gallion*, 257 F.R.D. 141 (E.D. Ky. March 30, 2009).

The Court finds that the proposed experts satisfy the Sixth Circuit's two-part test: the witnesses have sufficient knowledge and experience to be qualified as experts in campaign finance law, and their testimony will help explain the structure of the FEC to the jury. Each of Mr. Lundergan's proposed experts are at least as qualified as United States witness Michael Hartsock. Like Mr. Hartsock, Mr. Toner[1] may testify within the scope of the Government's witness. As described by the Government, Mr. Hartsock will testify "regarding his direct, personal knowledge of the mission, processes, and practices of the FEC in connection with receiving and publicly disclosing information concerning contributions to an authorized campaign committee." As to both witnesses, the Court will only allow testimony that serves to clarify "the complex regulatory scheme that is at the heart of this case." [R. 136 at 3.]

According to defense counsel, Mr. Toner's testimony could also establish that the campaign had no obligation to list Mr. Lundergan's contributions on its report, that the FEC would not have expected it on the report, and that campaigns in general would not report this type of contribution. But this is precisely the type of broad, determinative testimony that is

---

[1] Upon questioning, counsel for the defense conceded that it would be duplicative if both Mr. Toner and Mr. Nichols were to testify, and that Mr. Toner's testimony alone would be sufficient. [R. ___ (transcript to be filed).]

typically beyond the scope of expert opinion. In essence, this is nothing more than the expert sharing with he jury his opinion that the defendant did nothing wrong. This is an appropriate topic for argument, but not for witness testimony by either party. Ultimately, the experts may not speculate on the guilt or innocence of the defendants, or whether they believe the defendants' conduct fell within or without the bounds of permissible conduct under the FECA. *United States v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015) ("An expert may not opine on the overarching question of guilt or innocence[.]"). Likewise, they may not speak to either defendant's mental state in committing (or not) the violations. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are fore the trier of fact alone.").

With that said, the Court does recognize the precise scope of Mr. Toner's testimony and whether it should be expanded beyond this ruling is best determined in the context of trial, after the United States' case-in-chief. *Journey Acquisition-II L.P. v. EQT Production Co.*, 2014 WL 12650064 at *# (E.D. Ky. March 24, 2014) ("[W]hether expert testimony concerns improper legal conclusions 'often turns on the phrasing of the question posed[.]'"). Similarly, there may be relevancy issues that arise in the course of the testimony at trial. If that is the case, the United States may object at that time.

## 2

Next, counsel for Mr. Lundergan has issued subpoenas to three FEC officials: Chair Ellen L. Weintraub, Vice Chairman Matthew S. Peterson, and Director Debbie Chacona.[2] The United

---

[2] More specifically, Mr. Lundergan has subpoenaed Ms. Weintraub for the production of certain documents, Mr. Peterson for the production of documents and to testify at trial, and Ms. Chacona to testify at trial. [R. 199 at 1.].

States moves to quash these subpoenas. [R. 195.] According to the United States, these witnesses, if subpoenaed, would offer the testimony in the same vein as expert witness Michael Toner, which the United States contends amounts to nothing more than inadmissible legal conclusions. The United States is likely correct that the testimony would be similar. The subpoenas appear to be an attempt to implement a "Plan B" in the event the Court granted the United States' motion to exclude Mr. Lundergan's expert witnesses. Mr. Lundergan argues that it would be a "near-certain violation" of due process if Mr. Lundergan "is not permitted to call either of the expert witnesses who he has noticed . . . or to *obtain similar evidence and testimony through the subpoenas that are presently at issue.*" [R. 199 at 2 (emphasis added).] Mr. Lundergan further argues that "if the Court grants the Government's motion to exclude Lundergan's proffered expert testimony, then there will be a special need for Peterson's testimony in this case." *Id.* at 7. Whether to quash a subpoena is within the discretion of the trial Court, "since the necessity for the subpoena most often turns upon a determination of factual issues." *United States v. Nixon*, 418 U.S. 683, 702 (1974).

Here, the Court has not granted the United States' motion to exclude. Instead, Mr. Toner will be allowed to testify within certain limitations, described in the foregoing. For this reason, and as Mr. Lundergan admits, there is no need to subpoena these FEC witnesses. *Id.* at 2. The United States Motion to Quash is GRANTED.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the United States Motion *in Limine* to Exclude Testimony **[R. 120]** is **DENIED**. Mr. Toner may testify in conformance with this Order. Because Mr. Toner will testify, Mr. Lundergan has

not shown that he will require the documents and testimony described in the FEC subpoenas.

Accordingly, the United States' Motion to Quash **[R. 195]** is **GRANTED**.

This the 12th day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge