UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Criminal No. 5:18-cr-00106-GFVT |
| V. | ) ) | **MEMORANDUM OPINION** |
| GERALD G. LUNDERGAN and DALE C. EMMONS, | ) ) ) | **& ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon Defendant Gerald C. Lundergan's Motion for Reconsideration of Order on Motion to Quash. [R. 231.] Mr. Lundergan seeks clarification on the Court's earlier order [R. 206] denying the Government's Motion *in Limine* and allowing Mr. Lundergan's expert witness, former Chairman of the Federal Election Commission Mr. Michel Toner, to testify at trial. [R. 231.] Mr. Lundergan also asks the Court to reconsider its order quashing the subpoena duces tecum for a copy of the 2013–2014 unredacted RAD Manual. *Id.* For the reasons set out in this Order, that Motion is **DENIED**.

**I**

In the midst of trial and at an extremely late hour[1], Defendant Gerald C. Lundergan filed a Motion seeking reconsideration of this Court's earlier Order quashing his subpoenas to three FEC Officials: Chair Ellen L. Weintraub, Vice Chairman Matthew S. Peterson[2], and Director

---

[1] Mr. Lundergan's Motion for Reconsideration of Order on Motion to Quash was filed on August 26, 2019 at 12:42 a.m.

[2] When the Defendants first attempted to subpoena Mr. Peterson and the Court quashed those subpoenas, he was Vice Chairman of the FEC. As counsel for the defendants have made the Court aware, he has since resigned. [R. 243 at 5.]

Debbie Chacona. [R. 231.] Mr. Lundergan also sought the production of the an unredacted version of the FEC's Reports and Analysis Division Review and Referral Procedures (the RAD manual) for the 2013–2014 election cycle. At the time, Counsel for Mr. Lundergan argued that these witnesses and the RAD manual were necessary in order to avoid the "near-certain violation" of Mr. Lundergan's due process rights if he was "not permitted to call either of the expert witnesses who he has noticed . . . or to *obtain similar evidence and testimony* through the subpoenas that are presently at issue." [R. 199 at 2 (emphasis added).] The attempt to subpoena these high-ranking FEC officials appeared to the Court "Plan B" in the event the Court granted the United States' Motion to Exclude Mr. Lundergan's proffered expert witnesses. Thus, the Court granted the United States' motion to quash the subpoenas in part because the Court intended to allow defense expert Mr. Toner to testify at trial. [R. 206.]

Now, Mr. Lundergan moves this Court for clarification on the permissible scope of Mr. Toner's testimony, as well as reconsideration of its decision to quash the subpoena for the 2013–2014 RAD Manual. Understandably, the timing of the Motion means the Government has not filed a written response, but it made the oral representation before the Court that it stands by its arguments made in the Motion to Quash. Specifically, the United States asserts that the RAD manual is covered by the law enforcement privilege, and therefore inadmissible at trial. [R. 243.]

## II

"[I]t is within the broad power of the district court to reconsider an interlocutory order[.]" *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Reconsideration of an interlocutory order is justified under three circumstances: (1) where there is "an intervening change of the controlling law; (2) new evidence available; or

2

(3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Co. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009). Although common, "motions for reconsideration are 'extraordinary in nature and, because they run contrary to finality and repose, should be discouraged.'" *Younglove Constr., LLC v. PSD Dev., LLC*, 767 F. Supp. 2d 820, 824 (N.D. Ohio 2011) (*citing, e.g., Braithwaite v. Dep't of Homland Sec.*, 2010 U.S. Dist. LEXIS 32065, *1 (N.D. Ohio)). According to Mr. Lundergan, the Court's Order quashing its subpoenas was a clear error of law. [R. 231 at 3.]

## A

First, counsel for Mr. Lundergan articulates a concern that the testimony they may elicit from defense witness Michael Toner is limited by what the United States elicited on direct examination from Michael Hartsock. [R. 231 at 4.] This is not the case. As stated in the Court's previous Order [R. 206], Mr. Toner may testify "regarding his direct, personal knowledge of the mission, processes, and practices of the FEC in connection with receiving and publicly disclosing information concerning contributions to an authorized campaign committee," to the extent that such testimony "serves to clarify the complex regulatory scheme that is the heart of this case." The precise contours of that testimony are indeterminable outside the context of trial. However, it should be made clear that the Court does not intend to limit the direct examination of Mr. Toner to the scope of the direct testimony elicited from Mr. Hartsock, as if this were cross-examination.

The Court understands Mr. Lundergan's concern about the scope of Mr. Toner's testimony. That said, the Court was quite clear about what type of testimony is *disallowed*:

> According to defense counsel, Mr. Toner's testimony could also establish that the campaign had no obligation to list Mr. Lundergan's contributions on its report, that the FEC would not have expected it on the report, and that campaigns in

3

> general would not report this type of contribution. But this is precisely the type of broad, determinative testimony that is typically beyond the scope of expert opinion. In essence, this is nothing more than the expert sharing with the jury his opinion that the defendant did nothing wrong. This is an appropriate topic for argument, but not for witness testimony by either party. Ultimately, the experts may not speculate on the guilt or innocence of the defendants, or whether they believe the defendants' conduct fell within or without the bounds of permissible conduct under the FECA.

[R. 206 at 5–6.] While the Court will not limit Mr. Toner's testimony to the scope of Mr. Hartsock's direct testimony, the foregoing still applies. Having clarified those points, the Court is not persuaded to reconsider its decision regarding the need for the FEC subpoenas ad testificandum for additional witnesses.

**B**

Next, Mr. Lundergan takes issue with the dearth of analysis afforded to the RAD manual in the Court's previous Order. [R. 231 at 6.] Although the Court declines the invitation to reconsider its ruling, it will nonetheless further set out its reasoning here.

Federal Rule of Criminal Procedure 17 allows either party to subpoena a witness "to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Rule 17 also provides the district court the ability to "modify or quash" the subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. (c)(2). The Supreme Court decided in *United States v. Nixon* that a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 701 (1974). Whether to quash a subpoena for failure to jump these hurdles is within the discretion of the trial Court, "since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702.

4

Here, defendants seek the production of an unredacted[3] FEC enforcement manual "containing entirely secret thresholds applied by the agency in determining whether a reporting issue was material." [R. 231 at 7.] This is likely sufficiently specific under *Nixon*. However, the RAD manual is not relevant, and not admissible.

To begin, Mr. Lundergan insists that the RAD manual is crucial to his defense because, apparently, 18 U.S.C. §§ 1001 and 1519 require the Government to prove "that whatever was false or falsified in each report was *material* to the FEC or went to *impede, obstruct, or influence* an FEC investigation." [R. 231 at 7.] If that were the case, then it would be relevant to know the FEC's opinion on the matter. But Mr. Lundergan is reading requirements into the charging statute that simply are not there. Nowhere does §1001 say the false statement must be material to the FEC specifically; only "materially false." 18 U.S.C. § 1001(a)(2). Likewise, § 1519 only requires the "*intent* to impede, obstruct, or influence the investigation or proper administration of any matter;" there is no requirement that an FEC investigation be affected. 18 U.S.C. § 1519 (emphasis added). Finally, the word "material" has legal significance that varies across contexts and extends beyond what the FEC says in the RAD manual. And even where a false statement is "material" to the FEC, there could be logistical reasons for the FEC not to initiate an investigation or audit. For these reasons, the Court finds that defendants have failed to clear the relevancy hurdle set out in *Nixon*. 418 U.S. at 701.

Second, the FEC is the administrative agency tasked with enforcing the Federal Election Campaign Act, portions of which the defendants are alleged to have violated. Even if the document was relevant, it is not admissible. This is so because the FEC is the enforcement agency and consequently, the RAD manual is subject to the law enforcement privilege. "The

---

[3] A redacted version is available online at https://transition.fec.gov/pdf/RAD_Procedures_2013-14.pdf.

law enforcement privilege is a common law privilege recognized by state and federal courts." *United States v. Quebe*, 2017 WL 279539, *13 (S.D. Ohio January 23, 2017). It exists to protect "disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation." *In re Dep't of Investigation of City of N. Y.*, 856 F.2d 481, 484 (2d Cir. 1988). Mr. Lundegran is correct that the privilege is not absolute; however, "there is a strong presumption against lifting the privilege." *Quebe*, 2017 WL 279539 at *13.

The Court finds that the RAD manual is precisely the type of document intended to be shielded by the law-enforcement privilege. The manual contains "thresholds" by which the FEC decides what "reporting issues" to investigate or audit. [R. 195 at 6; R. 231 at 7.] If the general public knew of these thresholds, the FEC would be hampered in its enforcement ability by clever individuals who would purposely hover just below the threshold. Notably, Mr. Lundergan has not cited, and this Court cannot find, any case in which this document or another iteration of it has been made available in unredacted form. Even assuming Mr. Lundergan's request is brought in good faith, and noting that the information is not available through other sources, Mr. Lundergan has not persuaded this court that that information sought is important enough to lift the privilege. In sum, the Court finds the law-enforcement privilege applicable, and by extension the RAD manual inadmissible. Mr. Lundergan's Motion to Reconsider is DENIED on this point.

### III

For the foregoing reasons, Mr. Lundergan has failed to demonstrate that this Court made a "clear error of law" warranting reconsideration of its Order quashing his subpoenas. *Louisville/Jefferson Co. Metro* Gov't, 590 F.3d at 389. Accordingly, and the Court being

6

otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Gerald C. Lundergan's Motion for Reconsideration **[R. 231]** is **DENIED**.

This the 28th day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge