UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>GERALD G. LUNDERGAN, et al.,<br><br>Defendants. | Criminal No. 5:18-cr-00106-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

At the close of the Government's proof, Defendant Gerald G. Lundergan made an oral motion for a mistrial. Defendant Dale C. Emmons joined that motion, as well as renewed his earlier motion to sever. Of particular concern is certain 404(b) evidence concerning the alleged misconduct of Mr. Lundergan during Alison Lundergan Grimes' 2011 and 2015 Kentucky Secretary of State campaigns. After taking the motions under advisement over the course of the evening recess, the Court denied both motions from the bench.[1] Consistent with the bench ruling, the Court further sets forth its reasoning.

**I**

Mr. Lundergan's Motion for Mistrial essentially asks this Court to revisit its prior ruling on Mr. Lundergan's Motions to Exclude and Suppress. [R. 84; R. 85.] The Government sought to introduce evidence that Mr. Lundergan paid campaign consultants and vendors using funds from his corporation, S.R. Holding Co., Inc., for services rendered during Candidate A's

---

[1] Transcript and Minute Order documenting rulings to be filed.

campaigns for a Kentucky state office in both 2011 and 2015. [R. 90 at 1–2.] As part of the case *sub judice*, the Government must prove that Defendants *intended* to violate the certain federal campaign finance laws. Because the Defendants have presented a defense of mistake, the Government sought to introduce evidence of Mr. Lundergan's "other acts" during the 2011 and 2015 state races as probative of his "plan, preparation, knowledge, and absence of mistake" in 2014 Senate Campaign. *Id*. at 5.

Defendants objected to this evidence via its motions *in limine* as inadmissible under Rule 404(b), arguing it could not be probative of any issue other than propensity. [R. 84; R. 85.] The defense further argued that this alleged conduct was not related to the federal senate campaign that is the subject of the indictment, but to Grimes' 2011 and 2015 races for Kentucky Secretary of State. [R. 84 at 6.] The Court denied that motion, finding the Government sought to introduce the evidence pertaining to 2011 and 2015 contributions to prove Defendants' intent, knowledge, or absence of mistake, in the 2014 campaign. [R. 91 at 15.] This is a material issue in the alleged conduct relating to the 2014 campaign, and therefore an admissible purpose. *Id.* Now that the Government has concluded its case-in-chief, Defendants believe that the admission of this evidence through former Alison for Kentucky Campaign manager Jonathan Hurst warrants a mistrial. Mr. Emmons also renews his motion to sever, in part based on the prejudicial effect of the 404(b) evidence entered against Mr. Lundergan.

## II

The Court may declare a mistrial only where there is "manifest necessity" for termination of the proceedings, or where "the ends of public justice would otherwise be defeated." *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999) (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824)). Courts must exercise extreme caution in declaring a mistrial, doing so only "under

urgent circumstances, and for very plain and obvious cases." *See Arizona v. Washington*, 434 U.S. 497 (1978); *Johnson*, 198 F.3d at 594. Prior to declaring a mistrial, "the Court should always consider whether the giving of a curative instruction or some less drastic alternative is appropriate." *United States v. Smith*, 1991 U.S. App. LEXIS 19748, *42 (6th Cir. 1991) (citing *United States v. Martin*, 756 F.2d 323, 328 (4th Cir. 1985)). If a curative instruction will relieve prejudice to the defendant, it is not an abuse of discretion to deny a motion for a mistrial. *See United States v. Bennet*, 975 F.2d 305, 307 (6th Cir. 1992).

**A**

The circumstances surrounding this 404(b) evidence are largely the same as when the Court first ruled on its admissibility; the only additional factor to consider is the content of Jonathan Hurst's testimony. Prior to trial, the Government represented that "[Hurst] will testify that Lundergan left several business checks and approximately $20,000 cash in [Hurst's] home in 2015. [Hurst] will testify that these payments were compensation for expenses associated with a mailing that [Hurst] ordered, directed, and paid for on behalf of [Grimes'] 2015 campaign." [R. 91 at 8.] However, closer to trial, the Government supplied the defendants with a more detailed account of Mr. Hurst's future testimony. On August 11, 2019, the Government notified the Defendants Mr. Hurst would testify Mr. Lundergan left cash and checks in his couch which Mr. Lundergan intended "to be prospective compensation for additional mailings," but that he "did not issue the prospective mailings [and] retained the cash [.]" [Court Ex. 81.]

At trial, Mr. Hurst testified in accordance with the August 11 letter. Mr. Hurst told the jury that he had sent out mailings in connection with the 2015 state campaign for which he was reimbursed "with a check either from the coordinated part of the Democratic party or for Alison for Kentucky." [R. 261 at 75.] This check was left for him in a book in his home, put there by

3

Mr. Lundergan while Mr. Hurst was not present. *Id.* Mr. Hurst further testified that previously he and Mr. Lundergan talked about additional mailings; specifically, they "talked about where [Lundergan] thought we should send out mailings, what mailings he wanted and where he thought we should go." [R. 261 at 73–74.] He walked away from that conversation with the understanding that Mr. Lundergan wanted him to send out additional mailings. *Id.* On the same day that Mr. Hurst found the legitimate campaign check in the book, he also discovered an additional check for $25,000 from Mr. Lundergan with the words "boy scouts" in the memo line, along with approximately $20,000 in cash. *Id.* at 78. These were placed in Mr. Hurst's couch. *Id.* According to Mr. Hurst, the additional check and roughly $20,000 in cash were for future, additional mailings. *Id.* Ultimately, Mr. Hurst says he never sent out additional mailings because the campaign did not have legitimate checks to pay for them. *Id.* at 79. Mr. Hurst testified that he told Mr. Lundergan that fact, and that Mr. Lundergan "didn't care." *Id.* at 80.

The Defense argues that because Mr. Hurst testified that the cash and additional check were for future mailings never sent, as opposed to "compensation for expenses associated with a mailing that [Hurst] ordered, directed, and paid for," that this should change the Court's earlier calculus. It doesn't. The Government is required to prove Defendant's intent as an element of the offense. This evidence is still probative on that point.

Defendants assert however, that because the testimony indicated the money was payment for future mailings that were never sent as opposed to payment for past mailings, its probative value is lower and now, substantially outweighed by danger of unfair prejudice. Fed. R. Evid. 403. The Court disagrees. The issue of whether there is criminal intent is never dependent on being successful in one's criminal enterprise. Here, even though the money was never put to use [R. 261 at 79], the circumstances surrounding its delivery to Mr. Hurst [R. 261 at 79], and Mr.

4

Hurst's testimony about his understanding as to what it was for, mean this evidence is still highly probative on the ultimate issue of intent. [R. 261 at 75–80.] And although this conduct arises out of a different campaign for a different election, these are the same actors involved in the indicted charges, engaging in the same conduct as alleged in the indictment. [R. 178 at 4.] For these reasons, Mr. Lundergan's Motion for a Mistrial is DENIED.

**B**

In addition to joining Mr. Lundergan's Motion for a Mistrial, Mr. Emmons has renewed his earlier Motion to Sever. That Motion and the Court's Order denying it are filed in the record under seal due to privacy concerns regarding Mr. Emmons' physical health. [R. 188; R. 192.] But presumably, this Motion is now predicated on entirely new grounds, related to the prejudicial effect 404(b) evidence of Mr. Lundergan's conduct might have on Mr. Emmons.

The Court already has stated joinder was proper because both Mr. Lundergan and Mr. Emmons were indicted for several of the same counts, including the same conspiracy. *See United States v. Ledbetter*, 929 F.3d 338, 345–46 (6th Cir. 2019). Rule 14 permits, but does not demand, severance: "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." In this context, "prejudice" refers to "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Kennedy*, 743 F. App'x 649, 654 (6th Cir. 2018) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The trial court has wide discretion in ruling on a motion to sever trials of defendants who have been properly joined. *United States v. Breinig*, 70 F.3d 850, 852 (6th Cir. 1995).

The Court does not find such prejudice here. Mr. Emmons has argued that the presentation of 404(b) evidence against Mr. Lundergan will taint the jury's impression of him; however, it is typically the case that co-defendants tried together must endure evidence that applies only to their co-defendant. Relatedly, the Supreme Court has held that even where co-defendants present "mutually antagonistic" defenses, Rule 14 does not *per se* require severance. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). The relevant inquiry is whether the jury can be adequately instructed on its duty to consider each defendant, and the evidence against them, separately. *United States v. Lloyd*, 10 F.3d 1197, 1215–16 (6th Cir. 1993). Severance is not required where a limiting instruction will cure any risk of prejudice. *United States v. Ledbetter*, 929 F.3d 338, 346 (6th Cir. 2019)(citing *Zafiro*, 506 U.S. at 539). The Court fully intends to deliver such an instruction at the close of proof. Therefore, Mr. Emmons' Motion to Sever is, once again, **DENIED**.

### III

The foregoing supplements the previous rulings from the bench.[2] In sum, the Court is not persuaded that Mr. Hurst's testimony, although slightly different than anticipated by the Government, renders the 404(b) inadmissible and so prejudicial under Rule 403 as to warrant a mistrial. Likewise, Mr. Emmons has not shown that the 404(b) evidence offered against Lundergan is so prejudicial as to Mr. Emmons that their trials should have been severed. Accordingly, and the Court being sufficiently advised, the Motion for Mistrial and Motion to Sever are **DENIED**.

---

[2] Transcript and Minute Order documenting rulings to be filed.

This the 6th day of September, 2019.



Gregory F. Van Tatenhove
United States District Judge

0