UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GERALD G. LUNDERGAN, *et al.*,<br><br>    Defendants. | Crim. No. 5:18-cr-00106-GFVT-MAS-1<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Gerald G. Lundergan's Motion for Release Pending Appeal. [R. 377.] For the reasons that follow, Mr. Lundergan's motion will be GRANTED.

**I**

After a five-week trial, a jury found Mr. Lundergan guilty on all ten counts of the indictment, including conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, unlawful campaign contributions of $25,000 or more in violation of 52 U.S.C. § 30118 & 30109(d)(1)(A)(i), and false statements, aiding and abetting in violation of 18 U.S.C. § 1001(a)(2) & 2. [R. 362.] On July 21, 2020, Mr. Lundergan was sentenced to a term of incarceration of twenty-one months to be followed by two years of supervised release. *Id.* at 3–4. Mr. Lundergan was ordered to self-surrender on February 9, 2021. *Id.* at 3.

On August 6, 2020, Mr. Lundergan filed a Motion for Release Pending Appeal. [R. 377.] In support of his motion, Mr. Lundergan argues that he is not a flight risk and does not pose a danger to the safety of others, his appeal is not being made for the purpose of delay, and his

appeal raises substantial questions of law or fact likely to result in reversal or a new trial if granted. *Id.* at 1. Specifically, Mr. Lundergan makes the following three arguments: (1) there is a substantial question relating to the constitutionality of the contribution ban as applied to Mr. Lundergan; (2) failing to adequately distinguish between "contributions" and "expenditures" in the jury instructions presents a substantial question; and (3) the admission of other-acts evidence from prior elections presents a substantial question. *Id.* at 8, 13, 16. The Government argues that Mr. Lundergan is a flight risk and that none of the arguments in his appeal raise a substantial question of law or fact. [R. 384 at 1.] On November 2, 2020, Mr. Lundergan filed a Motion to Supplement the Filing in Support of Motion for Release Pending Appeal with the brief he filed with the Sixth Circuit. [R. 389.] On January 7, 2021, Mr. Lundergan filed a Motion for Extension of Time to report to Ashland FCI. [R. 392.]

## II

### A

Section 3143 of Title 18 sets out the conditions under which a defendant may be released pending appeal. The statute provides that a defendant must show: (1) by clear and convincing evidence that he is not a flight risk and does not pose a danger to the safety of others or the community; and (2) that the appeal is not for delay and raises a substantial question of law or fact that is likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *See United States v. Myers*, 2019 WL 7425387, at *5 (6th Cir. Nov. 19, 2019) (citing 18 U.S.C. § 3143(b)). The defendant bears the burden of overcoming the statutory presumption of detention. *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002) (citing *United States v. Vance*, 851 F.2d 166, 168

(6th Cir. 1988)).  In determining whether to detain or release a defendant, the Court may consider several factors, including: (1) the nature and seriousness of the offense charged, (2) the weight of evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988) (citing *United States v. Delker*, 757 F.2d 1390, 1398-99 (3d Cir. 1985)).

## B

Under the first prong of the § 3143 analysis, the Government concedes that Mr. Lundergan is not a danger to the community but argues that Mr. Lundergan has failed to demonstrate by clear and convincing evidence that he is not a flight risk.  [R. 384 at 4.]  As evidence of Mr. Lundergan's risk of flight, the Government points to his age, the prison sentence he is facing, the fact that he was convicted of multiple crimes involving deception, and his substantial financial resources.  *Id.*

Here, the mere fact that Mr. Lundergan received a sentence for crimes involving deception is not sufficient to establish an ability or willingness to flee from custody.  *See Chilingirian*, 280 F.3d at 708–09 (noting that the district court found defendant convicted of money laundering and sentenced to thirty-seven months imprisonment did not pose a flight risk). Further, while Mr. Lundergan may have substantial financial resources, his advanced age, lack of criminal history, and compliance with all release conditions militate against finding that he has the ability or willingness to flee from custody.  *See Vance*, 851 F.2d at 169-70 (listing factors to consider in determining whether to detain or release a defendant).  Mr. Lundergan is a native of

3

Kentucky and has a large extended family that also resides in Kentucky, and he is a Kentucky business owner who is responsible for dozens of employees. [R. 377-1 at 6.]

Mr. Lundergan's age, deep family and professional ties to Kentucky, lack of criminal history, and compliance with all release conditions are factors demonstrating that Mr. Lundergan is not a flight risk. Therefore, the Court finds by clear and convincing evidence that Mr. Lundergan satisfies the first prong of the § 3143 analysis.

As to the second prong, the Court finds as a preliminary matter that the appeal is not for the purpose of delay, and that the appeal presents a substantial question of law that, if decided in Mr. Lundergan's favor, would result in reversal or an order for a new trial. "[A]n appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (citing *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985)). A substantial question is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *United States v. Roth*, 642 F. Supp. 2d 796, 798 (E.D. Tenn. 2009) (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). The district court does not need to find that it committed reversible error under the statute. *Pollard*, 778 F.2d at 1181–82. The district court also does not have to show that it is "likely or probable that [the defendant] will prevail on the issue on appeal." *United States v. Powell*, 761 F.2d 1227, 1234 (8th Cir. 1985).

Here, Mr. Lundergan presents three issues that he contends are "close questions" that "could go either way:" (1) a novel constitutional challenge to the application of the corporate-contribution ban, (2) the failure of the jury instructions to adequately distinguish between

"contributions" and "expenditures," and (3) the admission of other-acts evidence on which the government relied. [R. 377-1 at 8.] Each of these issues will be addressed in turn.

a

The first question of law presented by Mr. Lundergan concerns the constitutionality of the contribution ban as applied in this case. [R. 377-1 at 9.] Mr. Lundergan argues that the "corporate-contribution ban as applied to an intrafamilial contribution" presents "complex questions of constitutional law." *Id.* This Court initially rejected Mr. Lundergan's constitutional challenge, finding that the ban applied to Mr. Lundergan's business and that there was no legal reason to carve out an exception to the ban as applied to corporations held by immediate family members. [R. 66 at 17.]

In arguing that this issue presents a substantial question, Mr. Lundergan points to *McCutcheon v. Fed. Election Comm'n*, and argues that the only "legitimate governmental interest for restricting campaign finances" is "preventing corruption or the appearance of corruption," specifically *quid pro quo* corruption. 572 U.S. 185, 206–07 (2014). Mr. Lundergan argues that it is "the quid" and not the family relationship that "must create the threat of corruption." [R. 377-1 at 10.] Mr. Lundergan also points to evidence that the FEC has declined to impose civil enforcement of FECA's contribution limits to intrafamily contributions and that commissioners have described the issue as "thorny." *Id.* at 12.

In response, the Government argues that Mr. Lundergan was found guilty of conspiring and causing illegal corporate contributions, not an "intrafamilial contribution," and that there exists no basis to exempt "a closely held, family-run corporation" from the rule against corporate contributions. [R. 384 at 5.] To bolster its claims, the Government points to footnote fifty-nine of *Buckley v. Valeo*, which states, "[a]lthough the risk of improper influence is somewhat

5

diminished in the case of large contributions from immediate family members, we cannot say that the danger is sufficiently reduced to bar Congress from subjecting family members to the same limitations as nonfamily contributors." 424 U.S. 1, 53 n.59 (1976).

Given the fact that this is an as-applied constitutional challenge, the Court finds that the impact of the contribution ban as applied to Mr. Lundergan is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in Mr. Lundergan's favor. Further, although the Court is confident in its ruling that *Buckley* sets out the applicable standard that forecloses the exception Mr. Lundergan is seeking, it recognizes that the issue of whether the contribution ban as applied to Mr. Lundergan is constitutional is a novel question and is one that could go either way. *See Roth*, 642 F. Supp. 2d at 798.

As Mr. Lundergan states, the issue of contributions from immediate family members was not the specific issue briefed and presented to the Supreme Court in *Buckley* and was relegated to a footnote. [R. 377-1 at 11.] Further, the Supreme Court concluded in *Citizens United v. Fed. Election Comm'n* that independent expenditures made by corporations "do not give rise to corruption or the appearance of corruption." 558 U.S. 310, 357 (2010). And in *McCutcheon*, the Supreme Court declined to "parse the differences" between contributions and expenditures. 572 U.S. at 199. These opinions potentially open the door for footnote fifty-nine in *Buckley* specifically, and the *Buckley* opinion in general, to be revisited. *See* Richard Briffault, *The Uncertain Future of the Corporate Contribution Ban*, 49 Val. U.L. rev. 397, 448–49 (2015) ("[I]f *McCutcheon* is signaling the Court's abandonment of *Buckley's* 'relatively complaisant review' of contributions then the contribution ban will be difficult, if not impossible, to sustain.").

Because the Court finds that the question of whether the contribution ban as applied to Mr. Lundergan is constitutional is a novel question that could go either way, and is one so integral to the merits of the conviction that it is more probable than not reversal or a new trial will result if decided in favor of Mr. Lundergan, the Court finds by clear and convincing evidence that Mr. Lundergan has raised a substantial question of law on appeal under 18 U.S.C. § 3143(b)(1)(B).

**b**

The second question of law presented by Mr. Lundergan is whether the jury instructions adequately distinguished between contributions and expenditures. [R. 377-1 at 14.] The relevant federal statutes prohibiting corporations from making campaign contributions to a federal candidate or federal campaign committee are 52 U.S.C. §§ 30118 and 30109(d)(1)(a)(i). On appeal, the Sixth Circuit reviews "jury instructions as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *Hurt v. Commerce Energy, Inc.*, 973 F.3d 509, 523 (6th Cir. 2020). Reversal is warranted only when the jury instructions "viewed as a whole, are 'confusing, misleading, and prejudicial.'" *Id.* (quoting *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009)).

The parties submitted draft jury instructions with competing definitions of the term "contribution." Mr. Lundergan proposed that contribution be defined as giving to a campaign in one of two ways: either (1) "giving money directly to a campaign," or (2) "paying for some types of things the campaign needs or wants to win an election in coordination with the candidate of her campaign," also known as in-kind donations. [R. 184 at 16.] The Government proposed the following definition of contribution:

7

> The term "contribution" includes any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office. The term "contribution" also includes the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose. The term "contribution" further includes any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value to any candidate, campaign committee, or political party, in connection with any election to the office of United States Senator, or a primary election held to select candidate for such election.

[R. 185 at 22.]

During the charge conference, on the issue of whether a corporation could make unlimited independent expenditures so long as there was no coordination, the United States argued that the Court's proposed instructions, drafted after considering those offered by the parties, were both confusing and a misstatement of the law. [R. 306 at 174–75.] Counsel for Mr. Lundergan responded that the jury instructions as to that issue were "an absolute 100 percent correct statement of the law, and far from confusing." [R. 306 at 176.] Over the Government's objection, that language was included in the final jury instructions. After a robust discussion between the parties at the charge conference, the following definition of "contribution" was included in the jury instructions:

> [T]he term "contribution" includes any gift, subscription, loan, advance or deposit of money or anything of value made by any person for the purpose of influencing any election for federal office. The term "contribution" also includes the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose. Finally, the term "contribution" also includes any direct or indirect payment, distribution, deposit, or gift of money, or any services, or anything of value to any candidate or campaign committee in connection with any election to the Office of United States Senator.
>
> A person may also make "contributions" in the form of expenditures that are coordinated with the campaign. . . . The term "expenditure" includes any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value made by any person for the purpose of influencing any election for federal office, as well as a written contract, promise, or agreement to make an

8

>expenditure. A corporation, on the other hand, if there is no coordination, can make unlimited independent expenditures.

[R. 298 at 25–26.]

Mr. Lundergan now argues that the jury instructions as a whole "left the standards muddled and uncertain," thereby rendering the instructions "defective." [R. 377-1 at 14, 17.] Mr. Lundergan points to overlap in the definitions of "contribution" and "expenditure" as an area of potential confusion for the jury, and states that a "critical distinction" between contributions and expenditures, the fact that contributions are made "to" a candidate or campaign, was not clearly explained to the jury. *Id.* at 15. In response, the Government argues that the instructions clearly defined the disputed terms "from the very first sentence" and that the instructions "left no room for the jury to treat an independent expenditure as a contribution." [R. 384 at 8.] In reply, Mr. Lundergan argues that the Government merely cherry-picked portions of the jury instructions when making its argument and failed to look at the instructions as a whole. [R. 386 at 7.]

Once again, although the Court is confident in its ruling, distinguishing between contributions and expenditures given the statutory language and subsequent caselaw is not without some room for fair disagreement. *See McCutcheon*, 572 U.S. at 231–32 (Thomas, J., concurring) ("[c]ontributions and expenditures are simply 'two sides of the same First Amendment coin,' and our efforts to distinguish the two have produced mere 'word games' rather than any cognizable principle of constitutional law"). Whether the jury found that Mr. Lundergan made independent expenditures or contributions was a critical distinction in determining guilt, and therefore is so integral to the merits of the conviction that reversal or a new trial could very well occur if the question were decided in Mr. Lundergan's favor. *See Pollard*, 778 F.2d at 1182.

9

The Court finds that the question of whether the jury instructions adequately distinguished between contributions and expenditures is one that could go either way, and is one so integral to the merits of the conviction that it is more probable than not reversal or a new trial will result if decided in favor of Mr. Lundergan.  Therefore, the Court finds by clear and convincing evidence that Mr. Lundergan has raised a substantial question of law on appeal as to this issue under 18 U.S.C. § 3143(b)(1)(B).

### c

The final question of law presented by Mr. Lundergan is whether the Court properly admitted Mr. Lundergan's prior conduct as other-acts or *res gestae* evidence.  [R. 377-1 at 17.] The appellate court will vacate the Court's verdict only if admission of the evidence constituted an abuse of discretion.  *See, e.g.*, *United States v. English*, 785 F.3d 1052, 1055 (6th Cir. 2015) ("We review for an abuse of discretion the district court's decision to admit [Rule 404(b)] evidence."); *United States v. Till*, 434 F.3d 880, 883 (6th Cir. 2006) ("We review evidentiary rulings of [*res gestae* evidence] for abuse of discretion.").

Over Mr. Lundergan's objection, this Court permitted the Government to admit evidence, either as *res gestae* evidence or other-acts evidence under Rule 404(b), of payments Mr. Lundergan made in 2011 and 2015 to help elect his daughter to the office of Kentucky Secretary of State.  *Id.*  Mr. Lundergan argues that the evidence lacks the temporal proximity and causal relationship to be admissible as *res gestae* evidence, and that under Rule 404(b), the probative value was substantially outweighed by the prejudice caused by admission.  *Id.* at 17–19.  The Government argues in response that the payments were temporally proximate and causally related to the charged conduct.  [R. 384 at 10.]  Furthermore, the Government argues that the payments were probative of Mr. Lundergan's "knowledge, intent, and absence of mistake" and

therefore admissible under Rule 404(b). *Id.* at 11. The Government also argues that the Court properly determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403. *Id.* at 13.

Upon further review, the Court remains confident in its ruling that admission of the evidence was appropriate. The prior payments demonstrated a causal, temporal or spatial connection required for the admission of *res gestae* evidence. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Furthermore, although the evidence was prejudicial to Mr. Lundergan, "mere prejudice is not enough." *United States v. Crump*, 934 F.2d 947, 955 (8th Cir. 1991); *see also Koloda v. General Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'") Here, the earlier payments were probative of Mr. Lundergan's knowledge, intent, and absence of mistake. Furthermore, despite Mr. Lundergan's contention that the Government made "extensive use" of the other-acts evidence, the Government relied on a plethora of evidence throughout trial and in the closing argument.[1] [R. 377-1 at 22.]

Ultimately, the Court does not find by clear and convincing evidence that Mr. Lundergan's third argument presents a substantial question of law likely to result in reversal or a new trial. However, given the Court's findings on Mr. Lundergan's first two arguments, the Court will grant Mr. Lundergan's motion for release pending appeal.

---

[1] Mr. Lundergan's trial lasted five weeks. The daily transcripts of the trial proceedings add up to 5,129 pages in length, and the United States' exhibit list included 459 exhibits. [R. 186.] The length of the trial and number of exhibits indicate that although the United States incorporated the other-acts evidence into its case against Mr. Lundergan, the Government did not excessively rely on the prior-acts evidence to the exclusion of other evidence.

**III**

In granting Mr. Lundergan's motion, the Court is cognizant of the short length of the sentence imposed and the risk that the sentence could be served in whole or in significant part before Mr. Lundergan's appeal is decided. *See United States v. Sweet*, 630 F.3d 477, 480 (6th Cir. 2011) (noting that the district court granted the defendant's motion for release pending appeal because of the short length of the imposed sentence and fear that the sentence could be served before the defendant's appeal was decided).

Therefore, for all the reasons stated above, the Court finds by clear and convincing evidence that Mr. Lundergan is not likely to flee or pose a danger to the safety of others or the community, and that his appeal is not for the purpose of delay and raises substantial questions of law that are novel and could go either way.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Lundergan's Motion for Release Pending Appeal **[R. 377]** is **GRANTED**;

2. Mr. Lundergan shall remain free on bond pending appeal in accordance with 18 U.S.C. § 3142(b) and upon the same conditions as his current bond;

3. Mr. Lundergan's Motion to Supplement **[R. 389]** is **DENIED AS MOOT**;

4. Mr. Lundergan's Motion to Extend Report Date **[R. 392]** is **DENIED AS MOOT**; and

5. The Clerk of the Court is directed to provide a copy of this Order to the United States Probation Office, and the United States Marshals Service.

This the 25th day of January, 2021.

Gregory F. Van Tatenhove
United States District Judge